HARRISON DILLS, impl'd, &c.,

*v.*

THOMAS JASPER.

THE QUINCY ENGLISH AND GERMAN SEMINARY, impl'd, &c.

*v.*

THE SAME.

1. MASTERS' SALES — *of the manner of conducting them — rights and liabilities of bidders.* The correct practice is, that a master in chancery exposing property for sale, should receive bids for it and report the largest one to the court for its approval; though it is not intended to be said that if this practice is not followed a sale would therefore be held void.

2. If the order upon which he acts contains especial directions in regard to requiring a deposit, they should be followed; but in case no such directions are given, he may, in his discretion, require a part or the whole of a bid to be deposited with him; or he may entirely dispense with such deposit.

3. A bidder is not allowed to retract his bid after its acceptance by the master, if it be approved by the court within a reasonable time; but a bid with or without

a deposit, although it is accepted by the master, does not become an absolute contract until it is approved by the court.

4. The bidder at such a sale merely agrees to purchase the property upon the terms named by him, if the same shall be approved by the court; and until the bid is reported and the report confirmed, the sale is incomplete and the bidder is under no obligation to complete the purchase.

5. In this country the master usually requires the amount of the bid to be deposited with him at the time of its acceptance, or immediately thereafter; and on failure to do so the master may reject the bid and again expose the property to sale; or he may report the bid to the court together with the failure of the bidder to make a deposit.

6. The master should not take the responsibility of rejecting a bid after it has once been accepted by him, where there is danger of loss to the parties in so doing, because he may render himself liable for it.

7. After the court has approved of a bid it may summarily require the bidder to pay the amount thereof, or it may order the property to be resold at the bidder's risk and expense; and if, upon a resale, it does not bring the amount of the bidder's liability, the court may summarily enforce the payment of the difference.

8. Although a bid may have been accepted by the master, yet if it was not reported or approved by the court, a resale of the property and the approval by the court of such resale, will operate as a rejection of the first bid, and put an end to the liability of the bidder thereon.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

On the 16th day of January, 1862, Thomas Jasper exhibited his bill in chancery in the court below to foreclose a mortgage alleged to have been executed by "the president and trustees of the Quincy English and German Seminary," to James F. Jaquess, on the 11th of July, 1861, upon a parcel of land in the city of Quincy, Illinois, being a portion of a block, bounded as follows: Beginning at the corner of Spring and Fourth streets on the north side of Spring street and west side of Fourth street, thence north to Oak street, thence west 250 feet, thence south to Spring street, thence east to the place of beginning.

The mortgage and the notes which it was given to secure were transferred by Jaquess to the complainant.

Harrison Dills, who also held a mortgage on the same premises from the seminary, was made a party defendant to the bill with the corporation.

Other parties, Jansen, Smith, Dickhut, Eull and Willey, were brought in by a cross-bill filed by Dills, the character of whose rights it is not necessary to mention.

At the October Term, 1862, a decree was rendered foreclosing the mortgage, and directing the master, on default in the payment of the sum found due within seventy days, to make sale of the premises, upon giving twenty days' notice thereof, and to execute a certificate of purchase to the purchaser; and also directing the distribution of the proceeds of the sale among the several parties in interest.

On the 14th of November, 1863, the master reported to the court that on the 15th of August previously, after having given the required notice, he sold the premises to James F. Jaquess for the sum of $22,000, that being the highest and best bid therefor; that Jaquess having failed to comply with the terms of the sale, and to pay the sum of money bid by him, he, the master, by direction of the complainant's solicitors, on the 23d of October, 1863, after notice given for that purpose, resold the premises to Porter Smith for the sum of $15,600, and gave him a certificate of purchase. The master also asked for further instructions in regard to the distribution of the proceeds of the sale.

On the same day the president and trustees of the seminary filed their petition in the Circuit Court, with the view to hold Jaquess responsible for the difference between the amount of his bid at the master's sale and that for which the premises were resold to Smith, as follows:

*To the Hon. Joseph Sibley, Judge of the 15th Judicial Circuit, Illinois:*

The petition and motion of the president and trustees of the Quincy English and German Seminary, defendants, showeth that, as appears by the master's report of sale herein, and as the facts are, James F. Jaquess, one of the defendants who is named in said cause, and a party to the record herein, and also named in the decree rendered herein at the October Term, A. D. 1862, and filed in this court on 20th November, 1862, did, on the 15th

day of August, 1863, by and through his authorized agent, William Marsh, Esq., bid off and purchase the premises described in the aforesaid bills and said decree, to wit: that certain tract of land situate in the city of Quincy, in said county of Adams, described as follows: Beginning at the corner of Spring and Fourth streets, on the north side of Spring street and the west side of Fourth street, and running thence north to Oak street, thence west two hundred and fifty feet, thence south to Spring street, and thence east to the place of beginning, said streets being of said city of Quincy, at a public sale thereof, made by the master in chancery of this court, under and in pursuance and as directed by said decree, said bid and purchase being for the sum of twenty-two thousand dollars, and accepted by said master.   Your petitioner states and shows, that from thence hitherto said James F. Jaquess, his said agent and his attorneys, and every other person for him, have wholly failed and neglected and refused to pay any money on said purchase and bid.   Your petitioners state that subsequent to said bid and purchase and failure to pay, and on the 23d day of October, A. D. 1863, the said master in chancery, at the request of Messrs. Skinner & Marsh, solicitors for complainant, made a second sale of said premises to Porter Smith, for the sum of fifteen thousand six hundred dollars, as stated in the said master's report.

Your petitioners now state and charge, that upon the aforesaid state of facts, and by reason of said bid and purchase of said James F. Jaquess, and his failure to comply therewith, and to pay his said bid of $22,000, and said subsequent resale of said premises, if confirmed at said reduced price of $15,600, your petitioners, a corporation created by and acting under a charter and laws passed and granted by the State of Illinois, have or will lose the sum of six thousand four hundred dollars, the difference between the bids at said sales.   Your petitioners have no adequate, and, indeed practically, no remedy at law against said Jaquess for damages arising to them by reason of the difference in the sums so bid at respective sales made by said master in chancery under said decree; and your petitioners now ask that said Jaquess, who now claims to be entitled to some portion of

said $15,600, the proceeds of said last sale, be held in these causes by proper decree, to compensate and pay to your petitioners the difference occasioned by his failure to comply with his bid at said first sale, and that said sum of money arising out of second sale, if it is confirmed by this court, remaining after paying costs herein, the sum or sums of money due to Harrison Dills, the sum or sums of money due said Jasper, Root, Jansen, Smith and Dickhut, and said Willey and said Eull, as provided by the aforesaid decree, be retained by this court to meet the difference between said sales by said master, instead of being paid to said Jaquess as claimed, and when so retained, paid over to petitioners or to whomsoever, except said Jaquess, may by decree in these causes be found to be entitled thereto.  Your petitioners state that said Jaquess has, so far as they know, and as they believe, no property tangible to execution, or out of which he could be made to respond in damages for the loss occasioned by his failure to complete his said bid and purchase, and that they believe said Jaquess to be insolvent; and your petitioners pray as hereinbefore set forth, and for such other and further relief as may be equitable, &c.

Dills also filed his petition of the same purport.  Proofs were introduced in support of the allegations in these petitions; and at the October Term, 1863, the court, upon consideration of the subject matter thereof, refused the prayer of the petitioners, and ordered that the sale on the 23d of October, 1863, to Porter Smith, and the master's report thereof, be approved and confirmed.  The court then proceeded to give the master more specific directions in regard to the distribution of the proceeds among the several persons entitled thereto.

· Thereupon the president and trustees of the seminary and Dills took their separate appeals.

The questions presented upon the record relate to the mode of conducting masters' sales, the rights and liabilities of bidders, and the effect of a confirmation of the second sale upon the liability of Jaquess to respond in damages for the difference between the amount of his bid and that which the premises brought upon a resale.

Messrs. F. V. MARCY and GRIMSHAW & WILLIAMS, for the appellants, presented the following points and authorities:

1.  Jaquess, having failed to comply with the terms of sale, and having neglected to pay the purchase-money, it thereby became the duty of the master to resell without any further order to that effect. In *Vinneson* v. *Cord*, 1 S. & M. Ch. 345, it was held that where the purchaser failed to pay the purchase-money, it was the duty of the master to proceed at once to resell, unless specially restricted by the decree. The English practice is different. The purchaser only pays a deposit at the sale, and if, on investigating the title, he thinks it defective, he may have a reference as to title, and if it prove defective, he is released from his purchase. Hence the necessity, under the English practice, of an order to show cause, before resale. In this country, the rule in judicial sales is *caveat emptor*, and the sale is absolute. Hence, if the purchaser does not comply with his bid, a resale takes place of course, and without further order.

2.  When a resale is made in consequence of the default of the purchaser, he is liable for the costs of resale, and for the deficiency, if any, in the amount produced at the resale. *Hay* v. *Commissioners*, 1 Dessau. 644; 2 Smith Ch. Pr. 2045; 2 Dan. Ch. Pr. 920. This being a judicial sale, the *court* is the vendor. *Hurt* v. *Stull*, 4 Md. Ch., Dec. 393; *Iglehart* v. *Armiger*, 1 Bland, 527. It is a well known rule, that a vendor of chattels, if the vendee fails to accept and pay for them, may resell in market and recover from the vendee the deficiency in the price produced at the second sale. Addison on Contracts, 1146. The same principle applies here. The court, through the master as its agent, being the vendor in the sale and resale, Jaquess is liable to the court for the deficiency in the second sale.

3.  The court has summary jurisdiction to enforce this liability upon Jaquess, both as a purchaser and as a party to the cause. *Coffey* v. *Coffey*, 16 Ill. 141; *Wood* v. *Mann*, 3 Sumn. 318; *Casamajer* v. *Strode*, 1 Sim. & Stu. 381 (1 Eng. Cond. R. 382); *Requa* v. *Rea*, 2 Paige, 345; *Clarkson* v. *Read*, 15 Gratt. 288. In *Wood* v. *Mann*, Judge STORY asserted this jurisdiction,

not only over the purchaser, but over a third party who had become surety for the purchase-money. The liability of the purchaser may be enforced either by attachment or by applying the money of the purchaser in court to the payment of the costs of resale, and the deficiency, if any, in the amount produced at such resale. See 2 Smith Ch. Pr. 204, 205.

The proper mode of enforcing the purchaser's liability, is by an order in the cause, on petition or motion. It is not necessary to resort to an original suit for that purpose. *Coffey* v. *Coffey*, 16 Ill. 144, and cases cited; 2 Smith Ch. Pr. 204, 205; *Wood* v. *Mann*, 3 Sumn. 318.

4. Had Jaquess completed his purchase, the debt of the college would have been discharged and Dills paid in full. The amount produced at the resale being deficient, Jacquess being liable for that deficiency, the proceeds of the second sale, including Jaquess' share thereof, being in court, Jaquess, Dills and the college being all parties to the suit, and the court thus having control of the fund, and of all the parties interested in it, we insist that it is the duty of the court to dispose of this fund according to all the equities in the case, including those which arise out of the sale and resale. Even if Jaquess were solvent, it would be an idle ceremony to pay this money out of court to him, and then proceed against him to compel him to pay it back. But the proof shows that he is insolvent, and if he is allowed to take the money out of court the parties interested will lose all remedy against him.

5. Trifling with judicial sales ought not to be permitted. If purchasers were allowed to abandon their purchases at pleasure, and without liability, any interested party might delay a sale indefinitely. All courts of chancery regard such conduct as a contempt of court, and punish it as such.

6. The statute of frauds has no application to judicial sales. 2 Daniel Ch. Pr. 921; *Attorney-General* v. *Day*, 1 Vesey Sen. 221; *Smith* v. *Arnold*, 5 Mason C. C. 420. If the statute did apply, the entry of the master in his book of sales was a sufficient memorandum. *Doty* v. *Wilder*, 15 Ill. 407; Brown on Stat. Frauds, §§ 347, 369. The price and name of purchaser

are set forth with sufficient certainty.  The premises sold are identified by the title of the cause inserted in the memorandum. The name of Jaquess, as purchaser, inserted in the memorandum by the master, who, in law, is deemed his agent, was a sufficient signing.  See *Johnson* v. *Dodson*, 2 M. & W. 653; Addison on Contracts, 45.  We therefore ask the court, as in the petitions, to control this fund, so that either it will be paid to Dills or paid to the seminary, as a portion of the damages due them by Jaquess.

Messrs. SKINNER and MARSH, for the appellee.

Upon the claim of appellants for summary application of any portion of the proceeds of the sale to either of them, by reason of a prior higher bid by Jaquess, whatever may be the general powers of equity courts in like cases, no case is made by the petitions, or proofs, upon which the court can grant their prayer.

The claim is in nature of specific performance, or rather compensation in damages for failing to perform a supposed contract of purchase by Jaquess.

1.  It is a sufficient answer, that the appellant mortgagor has sustained no damage, because he, or any in privity with him, may redeem from the last sale by paying the redemption money, far less than the original mortgage lien, his own debt, and have the title free of incumbrance.  There is now no divestiture of title, but only a specific lien on the property, by the decree and sale, for a portion of the mortgage debt.  No damage or injury can have occurred to the mortgagor, while he may make his title perfect and clear by paying a portion, or the whole of his own mortgage debt thereon.

2.  The bid of Jaquess was no more than the mortgage debt and costs decreed against the mortgagor, and if it had been paid the mortgagor would have had no right to any of it.  But by the affidavit of Finley the mortgagor is proven to be insolvent, *a fortiori*, then, being *law proof*, he cannot be hurt by any residue of the mortgage debt; and if any one is damaged it is Jaquess, who made the bid, because by the sale for less than the decree he has lost many thousand dollars of residue which would have belonged to him after paying his creditors under the trusts

of Jasper, and this residue, as a debt against the mortgagor, is worthless, by reason of the *insolvency* of the mortgagor.

3.　This jurisdiction of equity is invoked upon the ground of avoiding circuity of action, and presupposes default — breach of contract.　No rights could accrue as against Jaquess until he was put in default by tender, or what is equivalent to tender, of performance on the part of the vendor, until he had failed to pay the bid on the making and tender of a certificate of purchase, the evidence of his purchase, and made upon a sale regular in all things, and in pursuance of the decree of sale.　Where acts are to be concurrently done, as the execution of title papers and payment of consideration money, the party seeking remedy must show that he has performed, or at least was ready and willing to perform, on his part.　There is nothing by averment or proof showing any act, or readiness to act, on the part of the master or vendor in consummation of the sale, after the bidding or affirming the regularity of the sale.　No default of Jaquess is shown.　After the bidding, the whole thing, by acquiescence of all, appears to have been dropped.

4.　As the bidding of Jaquess was at a sale under decree of court, it must be shown not only that the sale was regular and the certificate of purchase made and tendered, but it must be shown that, upon master's report, the sale was adopted and confirmed by the court.　It was for the vendor to procure this confirmation — an order of court for compulsory payment by the powers of the court, or the alternative remedy of an order of resale at the *risk* of the bidder of the first sale and *such* resale; and this action of the court, thus fixing the responsibility of the bidder, should have been had upon *notice* to him.　Nothing of the sort appears.　Without this the bidder is deemed discharged.　And a resale without, through the action of the court, fixing the liability of the bidder, in case of master's sales, is an abandonment of the bid.　So the confirmation of the second sale, without objection, discharged the bidder at the first sale.　So the making of the sale anew, with acquiescence of the appellants, and without any effort to fix the first bidder, was an abandonment of the first sale, and neither party can now complain.

They have elected, and by that election all are bound. On these points the authorities seem uniform. 2 Hilld. V., ch. 41, § 4, p. 217; Dart V., ch. 19, § 2, pp. 554, 555, 559; 1 Barb. Ch. Pr. 528, 529; *Anonymous*, 2 Ves. 335; 2 Sm. Ch. Pr. 187, 188, 201, 206; 1 Sug. V. 66, 67; *Ex parte Minor*, 11 Ves. 559; *Flagg* v. *Fifield*, 13 Ves. 511, 518; 2 Hilld. S. 66, § 24; *Wagoner* v. *Cohen*, 4 Gill (Md.) 97, 102; 3 Bland Ch. 341; 1 Barb. Ch. Pr. 537.

Even where the bidder is pursued to confirmation of sale, the court will discharge him, if it do not appear that he is seeking an advantage, or trifling with the court. *Deaver* v. *Reynolds*, 1 Bland Ch. 50.

It is optional with the master, at least in the absence of objection on the part of the parties in interest, to execute the first sale, or, abandoning it, to proceed with a new sale. *Woodhull* v. *Neafie*, 1 Green Ch. 409, 411. Where bidder does not comply and parties do not press him, master should proceed to make another sale. *Thompson* v. *Dimond*, 3 Edw. Ch. 298, 299. Delay in completing sale discharges master, and delay in same discharges purchaser. *Jackson* v. *Edwards*, 22 Wend. 498; *Same* v. *Same*, 7 Paige Ch. 386, 412; 2 Dan. Ch. Pr. 909, 910.

5. The sale to Jaquess is void for want of written evidence of it. None is alleged in petition, and proof shows no sufficient note in writing. The master's entry was made *after*, not *at* the bidding in his private book. It does not attempt to describe the property sold, does not refer to anything from which the description appears; refers to no decree, to no court wherein any proceeding or decree is pending. It describes parties, but *not the* parties to this proceeding correctly. We submit this entry is wholly insufficient under the decisions of this court. *Doty* v. *Miller*, 15 Ill. 407, 410.

6. There was no appearance by Jasper, the trustee, nor Jaquess, the party in real interest in the matter of these petitions for redress by reason of Jaquess' bid, and there was no *notice* to either of them. Therefore, the court was not bound to take cognizance of them.

7. It is difficult to perceive on what principle it is claimed

that equity will summarily ascertain and appropriate damages supposed to have accrued from Jaquess to the mortgagor, "Quincy English and German Seminary," to pay a debt of that mortgagor to Dills, a third party. Yet Dills files these petitions, one as president of the mortgagor corporation, and one in proper person, experimenting by "hook or crook" to defeat Jaquess in getting a pittance of his large mortgage debt against a corporation the record shows his money built up. In fact, this matter of charging Jaquess on his bid is clearly a mere afterthought, the bid having been mutually abandoned, a new sale and new purchase adopted and acquiesced in by all.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

A master in chancery exposing property for sale, should receive bids for it, and report the largest one to the court for its approval. While such is the correct practice, we do not intend to say that if it is not followed we should hold the sale void. If the order upon which he acts contains especial directions in regard to requiring a deposit, they should be followed; but in case no such directions are given, the master may, in his discretion, require a part or the whole of a bid to be deposited with him; or he may entirely dispense with such deposit. A bidder is not allowed to retract his bid after its acceptance by the master, if it is approved by the court within a reasonable time; but a bid with or without a deposit, although it is accepted by the master, does not become an absolute contract until it is approved by the court. The bidder at such a sale merely agrees to purchase the property upon the terms named by him if the same are approved by the court; and until the bid is reported and the report is confirmed, the sale is incomplete, and the bidder is under no obligation to complete the purchase. In this country the master usually requires the amount of the bid to be deposited with him at the time of its acceptance, or immediately thereafter; and on failure to do so the master may reject the bid and may again expose the property for sale; or he may report the bid to the court, together with

the failure of the bidder to make a deposit.    The master should not take the responsibility of rejecting a bid after it has been once accepted by him, where there is danger of loss to the parties in so doing, because he may render himself liable for it.

After the court has approved of the bid, it may summarily require the bidder to pay the amount thereof, or it may order the property to be resold at the bidder's risk and expense; and if, upon a resale, it does not bring the amount of the bidder's liability the court may summarily enforce the payment of the difference.    Although the bid of Jaquess was accepted by the master, it was not reported or approved by the court.    The resale of the property by the master upon his own responsibility, the report of such sale to the court, and its approval thereof, was a rejection of the bid of Jacquess, and put an end to his liability thereon.

*Judgment affirmed.*