869 F.2d 1182
 50 Fair Empl.Prac.Cas. 160,
49 Empl. Prac. Dec. P 38,878
SAN FRANCISCO POLICE OFFICERS' ASSOCIATION; Lynn Torres;
Lillian Chai Mattoch; Henry Kirk, Plaintiffs-Appellants,
v.
CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation;
Civil Service Commission; Louis P. Lee; Rev. Dr. Howard S.
Gloyd; Carlota Texidor Del Portillo; Genevieve W. Powell;
A. Lee Munson, Defendants-Appellees.
 No. 85-2180.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 22, 1986.
Decided March 24, 1988.
As Amended March 7, 1989.
 
 Christopher D. Burdick, San Francisco, Cal., for plaintiffs-appellants.
 Louise Renne, City Atty. by Dan Siegel, Chief of Complex Litigation, San Francisco, Cal., for defendants-appellees.
 Robert Links, San Francisco, Cal., for amicus.
 James Wheaton, San Francisco, Cal., for intervenor-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before MERRILL, WIGGINS and NOONAN, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 This case began in 1973 when Officers for Justice brought suit alleging discrimination based on race and sex in the San Francisco Police Department. The suit was settled with a Consent Decree approved on March 30, 1979. Officers for Justice v. Civil Serv. Comm'n, 473 F.Supp. 801 (N.D.Cal.1979), aff'd, 688 F.2d 615 (9th Cir.1982), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). The parties to the decree were the City of San Francisco, the Civil Service Commission, the Officers for Justice, the San Francisco Police Officers' Association, and the United States.
 
 
 2
 The decree required that the City employ good faith efforts to achieve particular goals for the employment of women and minorities in the police department and prohibited the use of methods of selection that had an adverse impact on women and minorities unless the City proved they were valid under the Uniform Guidelines on Employee Selection Procedures, 28 C.F.R. 1607.
 
 The City also promised to:
 
 3
 Refrain from discriminating at any time on the basis of race, sex, or national origin in hiring, promotion, upgrading, training, assignment, or discharge or otherwise discriminating against an individual employee or applicant for employment with respect to compensation, terms and conditions or privileges of employment because of such individual's race, sex, or national origin.
 
 
 4
 In 1983 the City gave examinations for promotion to Q-35 Assistant Inspector and Q-50 Sergeant. The examinations were in three parts: a multiple choice test measuring technical knowledge and problem solving; a writing skill test; and an oral test measuring ability to communicate, interpersonal qualities, and supervisory abilities. The Civil Service Commission set weights for the examination components as follows:
 
 Q35 Q50
 
 5
 Multiple choice: 45% 41%
 
 
 6
 Written communications 29% 29%
 
 
 7
 Oral examination 26% 30%
 
 
 8
 When the examinations were graded and weighed according to this formula there was a slight adverse impact on women in the Q-35 examination and a substantial adverse impact on minorities in both examinations. The City did not validate the results under the Uniform Guidelines so that under the Consent Decree no promotion could be based on these examinations.
 
 
 9
 In June 1984, on the recommendation of the City Attorney, the Commission revised the weights it gave the three parts in such a way that a larger number of minorities ranked in the top group. The Police Officers' Association objected to the use of the revised weights and made the contention that the reweighting was designed to discriminate against individuals on the basis of race. The district court, however, gave summary judgment for the City, and the Officers' Association appealed. We initially decided in its favor. We reconsider our judgment on rehearing.
 
 
 10
 The test itself was not in compliance with the Consent Decree, so the persons who did well on it did not acquire any rights. When, however, the City arbitrarily changed the weighting and promoted on the basis of this weighting, the City violated the Consent Decree by discriminating on the basis of race and sex. The victims of this discrimination were not the particular officers who had done well under the first weighting, as they had acquired no rights, but the larger group of all the white males who took the test and who were passed over by the discriminatory weighting and subsequent promotions.
 
 
 11
 One possible relief would be to order the City to discharge those who were illegally promoted and open up the jobs to a new and fair examination. This solution is precluded by the precedents governing equitable relief where there has been discrimination. The beneficiaries of the revision did not cause the City to do what it did. It would be inequitable to penalize them by ousting them from their positions. United States v. Navajo Freight Lines, 525 F.2d 1318, 1326 (9th Cir.1975) (per Sneed, J.). The complaint filed by the Officers' Association did not seek back pay but the declaratory relief which is here given.
 
 
 12
 There is no need to tell the City that it should not engage in discriminatory weighting of parts of an examination it has already given and weighted. The City now concedes a Supplemental Order of the district court dated October 27, 1986, "protects against scoring standards being set before examination and then changed after examination." The City's position is a concession that binds it. It is also bound by the order of the district court. It is unnecessary to express the City's obligation in yet another injunction.
 
 
 13
 No further action is necessary by the district court. The Officers' Association may apply for attorney's fees in this court.
 
 
 14
 REVERSED.