35 A.3d 1154

**John BURSON, et al.**

v.

**David SIMARD.**

**No. 35, Sept. Term, 2011.**

Court of Appeals of Maryland.

Jan. 23, 2012.

Richard W. Drury (McMullen & Drury, P.A., Towson, MD), on brief, for Petitioners.

Byron L. Huffman (Byron L. Huffman, P.C., Columbia, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

ADKINS, J.

In yet another foreclosure case, we address the consequences of a default by the successful bidder at an auction of real property. After the auction sale was ratified, Respondent David Simard defaulted on his contract to purchase the real property in question. Simard admitted liability for the risk and expense of the initial resale, but when the purchaser at the resale defaulted as well, Simard balked at paying the expense and loss incurred at a second resale. Applying Maryland Rule 14–305(g), the Circuit Court for Baltimore County held that Simard was liable for the risk and expense of both resales. On Simard's appeal from this order, the Court of Special Appeals reversed in a reported opinion, interpreting Rule 14–305(g) to require that a defaulting purchaser be responsible for only one resale. *See generally Simard v. Burson,* 197 Md.App. 396, 410, 14 A.3d 6 (2011).

The Petitioners, the Substitute Trustees of the property,[1] filed a timely petition for *certiorari* which we granted, *Burson v. Simard*, 420 Md. 81, 21 A.3d 1063 (2011), to answer the following question:

> When a foreclosure purchaser defaults, is he or she liable, under Maryland Rule 14–305(g), for the risk and expense of more than one resale? [2]

■ We shall affirm the Court of Special Appeals. Absent special circumstances, a defaulting purchaser at a foreclosure sale of property is liable, under Rule 14–305(g), for only the one resale resulting from his or her default.

### Facts and Legal Proceedings

On February 28, 2007, David Simard submitted the high bid ($192,000) at a foreclosure sale for the property known as 403 Cherry Hill Road, Reisterstown, MD 21136 ("property"). He then defaulted by failing to go to settlement. The Circuit Court for Baltimore County ordered that the property be "resold at the risk and expense of the defaulting purchaser, DAVID SIMARD[.]" At the second auction, on October 16, 2007 ("first resale"), the property was resold to Stan Zimmerman, for $163,000, but Zimmerman defaulted as well. The

---

1. On April 16, 2007, the Circuit Court for Baltimore County ordered, following a request by the holder of the deed of trust securing the property, that the original trustee on the deed of trust be replaced by John S. Burson, William M. Savage, Jason Murphy, Kristine D. Brown, and Gregory N. Britto ("Substitute Trustees"), and that they "succeed to all the title, power and duties conferred upon the Original Trustee(s) by the terms of said Deed of Trust and by applicable law." Hereafter, we refer to the Substitute Trustees as "Trustees."

2. The Substitute Trustees asked two questions, but we understand those questions as asking the same thing. The two questions are:

    Was the Court of Special Appeals correct in holding that Maryland Rule 14–305(g) contemplates that when a foreclosure purchaser defaults the defaulting purchaser's "risk and expense" at a resale attaches only to the one resale resulting from his or her default? Was the Court of Special Appeals correct in holding that the first defaulting purchaser is only liable for the loss resulting from the original foreclosure sale to the first resale because he did not cause the second defaulting purchaser to breach?

court then ordered that the property be resold once again, this time "at the risk and expense of ... STAN ZIMMERMAN[.]" JBJ Real Estate, LLC, purchased the property for $130,000 on June 12, 2008 ("second resale"), and proceeded to settlement.

Pursuant to Md. Rule 14–305(f), the Circuit Court referred the final sale for an audit. The audit found that Simard was liable for the difference between the price that he originally agreed to pay for the property ($192,000) and the price for which it ultimately sold ($130,000). It also found him liable for expenses relating to the first and second resales. The audit found Stan Zimmerman liable for expenses relating to the second resale and the price differential between the first and second resales.

After the Circuit Court ratified the audit, Simard filed a motion for reconsideration, arguing that he was not liable for expenses or losses occurring after the first resale. The court denied his motion, holding that he was liable under Rule 14–305(g) for consequential damages relating to both resales.[3] On Simard's appeal, the Court of Special Appeals reversed, holding that "Rule 14–305(g) contemplates that, when a foreclosure purchaser defaults, the court may order a singular resale, not multiple resales, and the defaulting purchaser's 'risk and expense' attaches only to the one resale[.]" *Simard,* 197 Md.App. at 410, 14 A.3d at 14.

## Interpretation of Rule 14–305(g)

The Trustees argue: "Contrary to the holdings of the Court of Special Appeals[,] Rule 14–305(g) does not contemplate that a defaulting purchaser's 'risk and expense' attaches only to the one resale resulting from his or her default." Simard, on the other hand, argues that the correct interpretation of Rule 14–305(g), consistent with the decision in the Court of Special

---

**3.** At a hearing on the motion, the parties stipulated that there were no facts in dispute, that the audit was mathematically correct, and that Simard was liable for the risk and expense of the October 16 resale ("first resale").

Appeals, is that "when a second resale is ordered, *that* sale is held at the risk of the second defaulting purchaser, not the first defaulting purchaser." He contends that to interpret the rule as providing for multiple resales at the risk and expense of the original purchaser would run contrary to its "plain language."

Rule 14–305(g) reads as follows:

If the purchaser defaults, the court, on application and after notice to the purchaser, may order a resale at the risk and expense of the purchaser or may take any other appropriate action.

"Because our interpretation of the ... Maryland Rules [is] appropriately classified as [a] question[ ] of law, we review the issues ... to determine if the trial court was legally correct[.]" *Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78, 80–81 (2004). As we observed in *Zetty v. Piatt,* 365 Md. 141, 152–153, 776 A.2d 631, 637–38 (2001):

In construing a rule, we apply principles of interpretation similar to those used to construe a statute. First, we must examine the words of the rule, giving them their ordinary and natural meaning. Where the language of the rule is clear and unambiguous, our analysis ends. Where the language of the rule is ambiguous, this Court will examine the history of the rule to aid in determining the reasonable intendment of the language used in the light of the purpose to be effectuated. The ultimate goal of this Court is to give the rule a reasonable interpretation in tune with logic and common sense. (Citations and quotations omitted.)

As Simard argues, the language of the rule, by referring to "a resale," would seem to indicate that each defaulting purchaser is liable for one resale, not multiple resales. *Compare* N.C. Gen.Stat. Section 1–339.30(e) ("A defaulting bidder at any sale or resale ... is liable on the bid, and in case a resale is had because of such default, the defaulting bidder remains liable to the extent that the final sale price is less than the bid, and for all costs of the resale **or resales**." (emphasis added)). Certainly, the Rules Committee and this

Court are well aware of how to draft a rule providing for "resales" at the risk and expense of "the purchasers," instead of "**a resale** at the risk and expense of **the purchaser**[.]" Rule 14–305(g) (emphasis added).

This interpretation is consonant with the treatment in treatises on mortgage foreclosures. *See Wiltsie on Mortgage Foreclosure* (1939), § 773 (stating that "it is a general rule that where the purchaser at a mortgage foreclosure sale neglects or refuses to complete his contract according to the terms of sale, a resale may be ordered; and in case of a resale **such purchaser** will be liable for the costs of **such resale** and for the deficiency, if any" (emphasis added)); *id.* at § 735 (providing that "if the purchaser refuses or neglects to pay the purchaser money and to take the title, or otherwise to comply with the terms of sale, and a resale is consequently had, he is liable for any deficiency on **the resale**" (emphasis added)); *see also Camden v. Mayhew,* 129 U.S. 73, 83, 9 S.Ct. 246, 32 L.Ed. 608 (1889) (observing that the court "could have held [the defaulting purchaser] to his offer, and ordered a resale in the meantime at his risk, both in respect to the expenses of the resale and any deficiency **resulting therefrom**" (emphasis added)).

Countering, the Trustees correctly point out that, under Md. Rule 1–201(d), "words in the singular include the plural." They argue that "Rule 14–305(g) should be interpreted ... to provide that the 'risk and expense' of the defaulting foreclosure purchaser at the original sale continue through **multiple** resales of the property" (emphasis added). We cannot rule out applying Rule 1–201(d) as we interpret Rule 14–305(g). Yet, to recognize that "words in the singular include the plural" does not compel the result that the Trustees desire. Indeed, that section, in its entirety, provides: "Words in the singular include the plural and words in any gender include all genders **except as necessary implication requires.**" Md. Rule 1–201(d) (emphasis added).

In *Davis v. State,* 196 Md.App. 81, 99, 7 A.3d 690, 700 (2010), the Court of Special Appeals applied the last clause of

326

Rule 1–201(d) and held that the word "judge" in Rule 4–243(c) did not include the plural "judges." The court held that "the 'necessary implication' of the language of Rule 4–243 require[d] a singular construction not only because of the procedural process contemplated by the rule ... but because of the practical impossibility" of effectuating the rule with a plural interpretation. *Id.* at 98, 7 A.3d at 700. We agree that practical and procedural difficulties can "necessarily imply," in some instances, that words in the singular do not include the plural.

Thus, Rule 14–305(g), although not ambiguous on its face, allows room for interpretation as to whether a court may order that subsequent sales be held at the expense and liability of the original bidder. We must apply other methods of interpretation in arriving at a resolution of this issue.

Relying on our decision in *Simard v. White*, 383 Md. 257, 859 A.2d 168 (2004),[4] the Trustees ask that we apply an interpretation of the rule that protects the interests of mortgagors and mortgagees. They aver that their interpretation, under which the original purchaser's liability "continue[s] through multiple resales of the property," best accomplishes this goal. To be sure, the interpretation advocated by the Trustee would enhance the likelihood that mortgagors and lenders would secure a full recovery from their loss caused by the original purchaser's default, a desirable result. Yet, other considerations must be weighed.

To begin, we need to consider whether the Trustees' interpretation would require holding purchasers liable for expenses and losses that they did not cause. Principles of contract law guide our interpretation, because, as we observed in *McCann v. McGinnis*, 257 Md. 499, 505–06, 263 A.2d 536, 539 (1970), a judicial sale of property creates a contract with the court:

---

4. In *Simard v. White*, 383 Md. 257, 317, 859 A.2d 168, 203 (2004), we held that in a mortgage foreclosure, "the proper priorities ... have been for over two hundred years to primarily protect the interests of mortgagors and mortgagees."

The court is the vendor in the case of a sale under the power contained in a mortgage, just as it is a vendor in any other chancery sale. Therefore, the question with which we are faced when, as here, there is the failure on the part of a purchaser to comply with the terms of sale by settlement, is what remedy exists for breach of contract with the court. (Citations omitted.)

■ When a contract is breached in Maryland,

The general rule [regarding remedies] is enumerated in *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854): "the damages for a breach of contract should be such as may fairly and reasonably be considered, either as arising naturally, i.e. according to the usual course of things from such breach of the contract itself; or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 162 n. 25, 916 A.2d 257, 288 n. 25 (2007). We have used the terms "general damages" and "special damages" to describe this rule. *Addressograph–Multigraph Corp. v. Zink*, 273 Md. 277, 286, 329 A.2d 28, 34 (1974) ("[D]amages which a plaintiff may recover for breach of contract include both those which may fairly and reasonably be considered as arising naturally from the breach (general damages) and those which may reasonably be supposed to have been in the contemplation of both parties at the time of making of the contract (special damages)."). "Special damages" are sometimes called "consequential damages," *see Hinkle v. Rockville Motor Co.*, 262 Md. 502, 510–511, 278 A.2d 42, 46–47 (1971), and courts may award "incidental damages" as well, *Lloyd*, 397 Md. at 162, 916 A.2d at 288; *Powell on Real Property* § 81.04[2][c]; *Corbin on Contracts* § 60.12 (2005).

■ In the case of a purchaser's breach of a contract for sale of land, general damages are "the difference between the contract price and the fair market value at the time of breach." *Kasten Constr. Co., Inc. v. Jolles*, 262 Md. 527, 531,

278 A.2d 48, 51 (1971); *Corbin on Contracts* § 60.12 (2005) ("In case of breach by the purchaser, the vendor's general damages are the full contract price minus the market value of the land at date of breach and also minus any payment received."). "The injured vendor may introduce evidence of a resale of the property as an alternative means of establishing damages, [b]ut in such a case, the burden is upon the seller to establish that the sale was fairly made within a reasonable time after breach." *Kasten*, 262 Md. at 531–32, 278 A.2d at 51 (citations omitted).

The remedy of resale at the defaulting buyer's expense has been viewed in several ways. *See* 3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.17(3), at 400 (2d ed.). Resale can be seen as a way to determine the amount of these benefit of the bargain damages. *See id.* The theory is that a sale conducted shortly after the first sale, on the same terms, will yield bids equal to the fair market value of the property. Once that is determined, the original purchaser is liable for the difference between the amount he bid and the amount bid at the second sale so that if his bid is higher than the second sale, he gives the seller the benefit of their bargain. These would be general damages. The defaulting purchaser is also liable for any consequential damages, which would include the cost and expense of conducting the second sale.

The Trustees seek to attach other damages to Simard's default. In their words,

On May 16, 2007 the Substitute Trustee's petition for the resale of property listed Simard as the purchaser who defaulted by "refu[sing]" to go to settlement" and asked the court to order a resale of the Property "at the sole risk and expense of the defaulting purchaser." A Show Cause Order was issued . . . in which the court ordered Simard to show cause why the Property should not be sold at his risk and expense and why his deposit should not be forfeited. Simard filed no response and offered no evidence to show cause why the Property should not be sold at his risk and expense. . . . Simard did not show cause to the contrary and the resale was ordered at his risk and expense. If Simard

had no basis for showing cause why the First Resale should not be conducted at his risk and expense there is no reason to believe he had a basis to do so prior to the order for the Second Resale.

We do not agree with Petitioners' framing of this damages issue.

To be sure, "an innocent party to a broken contract should be awarded damages that could reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or, such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract[.]" *Kasten*, 262 Md. at 532, 278 A.2d at 51.[5]  Yet, the question is not whether Simard was able to show cause why these additional damages should not attach, but whether the default by Zimmerman constitutes either benefit of the bargain damages or consequential damages for which Simard is liable.  In averring Simard's liability for these claimed damages, the Trustees do not argue that the purchase price at the second resale represents the fair market value of the property at the original sale eight months earlier, a showing required for benefit of the bargain damages.  Accordingly, we will analyze them as possible consequential damages.

So, the question becomes whether the default of the purchaser at the second resale is a consequence arising "naturally, i.e., according to the usual course of things[.]"  *Id.*  We conclude that it is not.  A resale is a remedy chosen by the vendor, with the approval by the court, for the purpose of defining and limiting consequential damages.[6]  The defaulting

---

**5.**  *See also* 3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.12(1), at 308 ("[T]he vendor is entitled to recover special damages in addition to or in lieu of general damages, provided such damages are within the contemplation of the parties [and] are proven with reasonable certainty[.]" (footnotes omitted)).

**6.**  *Cf.* 3 *Dobbs Law of Remedies* § 12.17(3), at 400 (stating that under the UCC, a resale "might be a step that should be taken under some circumstances to minimize consequential damages.")

purchaser at a judicial sale is not a guarantor that all future sales contracts, entered by the trustees for that property, will be performed. Such a defaulting purchaser is not liable for losses "caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate." *Cf. Baltrotsky v. Kugler,* 395 Md. 468, 478, 480–81, 910 A.2d 1089, 1095, 1097 (2006) (holding that the purchaser was not liable for interest incurred due to delay in settlement because he was not responsible for the delay); *Oldenburg & Kelly, Inc. v. Regester,* 118 Md. 394, 397–98, 85 A. 411, 412 (1912) ("In view of the special circumstances which interfered with the ratification of the sale in due course ... the equities require that the trust estate rather than the purchasers should bear the charges in dispute.").[7]

Returning to the text of Rule 14–305 and the intent in its adoption, we think it was crafted with the common law conceptions of consequential damages in mind. We interpret the language "may order a resale at the risk and expense of the purchaser" to be intended to mean that the risk and expense shall be limited to one resale—the most likely method to define the damage caused by the original purchaser's default. If we were to hold, as the Trustees request, that whenever a second resale occurs, prior defaulting purchasers become liable for that resale, wasteful litigation would likely ensue between purchasers over how to allocate costs. *See Exxon Valdez v. Exxon Mobil Corp.,* 568 F.3d 1077, 1082 (9th Cir. 2009) (cautioning against "inviting increased and wasteful litigation over the apportionment of costs"); *In re Reading Co.,*

---

7. *See also Dills v. Jasper,* 33 Ill. 262, 273 (1864), *overruled on other grounds by Comstock v. Purple,* 49 Ill. 158, 170 (1868) ("The resale of the property by the master upon his own responsibility, the report of such sale to the court, and its approval thereof, **was a rejection of the bid of Jaquess, and put an end to his liability thereon.**" (emphasis added)); *Definite Contract Bldg. & Loan Ass'n v. Turnin,* 158 Va. 771, 164 S.E. 562, 566–67 (1932) (holding that a resale can "conclusively fix the amount of the damages" so long as it is "made within a reasonable time after the breach, upon as favorable terms and under as favorable circumstances as the original sale, and the property must be the same and the title as good as that first sold").

115 F.3d 1111, 1119 (3d Cir.1997) (The "undesirable alternative" of "additional rounds of litigation to apportion [the parties'] losses ... suggests all the more clearly that Congress intended" to avoid such a result); *Murray v. Fairbanks Morse*, 610 F.2d 149, 161 n. 14 (3d Cir.1979) (cautioning against opening the door to "loss apportionment through protracted litigation"); *In re Estate of Harvey*, 395 Pa. 62, 149 A.2d 104, 109 (1959) (avoiding an interpretation that "would be productive of more, not less, litigation in the field of apportionment ... and would render more unworkable than ever the [rule]"). Additionally, to hold the original foreclosure purchaser liable for all subsequent defaults by other purchasers would expose defaulting purchasers to an unreasonable amount of damages. *See Tauber v. Johnson*, 8 Ill.App.3d 789, 794, 291 N.E.2d 180 (1972) (observing that it is an abusive practice to allow a "series of sales and resales and each time bring a high deficiency judgment against the defaulting purchaser"), *overruled on other grounds by State Nat'l Bank v. Northwest Dodge, Inc.*, 108 Ill.App.3d 376, 64 Ill.Dec. 26, 438 N.E.2d 1345, 1350 (1982).

The result we reach in this case is consistent with the parties' reasonable expectations as shown by the record in this case.[8] The Trustees' petition for the second resale requested that it be "resold at the risk and expense of the defaulting purchaser, STAN ZIMMERMAN[.]" If the parties had intended that Simard be liable for the second resale, it is only reasonable to conclude that they would have said so in their petition.[9] [10]

---

8. Maryland courts "employ an objective approach to contract construction with the goal of interpreting the contract in a manner consistent with the parties' intent." *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 88, 5 A.3d 683, 691 (2010) (citations omitted).

9. The Trustees argue that the history of the rule "sheds no real light on the issues in this case." We agree. *See Zetty v. Piatt*, 365 Md. 141, 152–53, 776 A.2d 631, 638 (2001) ("Where the language of the rule is clear and unambiguous, our analysis ends. Where the language of the rule is ambiguous, this Court will examine the history of the rule[.]" (citations omitted)).

**332**

## Conclusion

Absent special circumstances, a defaulting purchaser at a judicial sale of property is liable, under Rule 14–305(g), for only the one resale resulting from his or her default.[11] For the foregoing reasons, we hold that Simard is not liable, under Rule 14–305(g), for the risk and expense of the second resale.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

**10.** Finally, the Trustees rely on equitable arguments to support their assertion that a defaulting purchaser should be liable for the risk and expense of all subsequent purchasers' defaults:

> The mortgagor's claim that the first defaulting purchaser should be responsible for the difference between his bid and the ultimate sale price is at least as equitable as is a defaulting purchaser's claim that his liability should be limited to the difference between his bid and the second defaulting purchaser's bid.
>
> *    *    *
>
> The mortgagor should be permitted to pursue anyone who entered in the proceeding, bid on the Property and could not fulfill their promises. That is the only equitable result.... Simard should certainly not be entitled to the protection of Zimmerman's bid which was as worthless as his own.... "He who seeks equity must do equity."

We disagree that the equities work exclusively to the benefit of mortgagors and mortgagees. To be sure, Rule 14–305(g) and our precedents make it clear that a defaulting purchaser exposes himself to a significant degree of liability for the expenses and losses caused by his default. *See generally Simard v. White*, 383 Md. 257, 859 A.2d 168 (2004). But nothing in the rule or our precedents suggests that a defaulting purchaser should be liable for all losses and expenses incurred throughout the remainder of the foreclosure proceeding. Indeed, it is generally inequitable to hold a person liable for losses that he or she did not cause. *See, e.g., S.F. Police Officers' Assoc. v. San Francisco*, 869 F.2d 1182, 1184 (9th Cir.1988) ("The beneficiaries ... did not cause the City to do what it did. It would be inequitable to penalize them[.]").

**11.** We express no view on the meaning of the phrase "any other appropriate action" in the rule.