MACON, ET UX. *v.* ZEILER, ET UX.

[No. 105, September Term, 1963.]

*Decided December 11, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Hillard P. Albert* and *William D. Wells* for appellants.

*Edward W. Mogowski* for appellees.

HAMMOND, J., delivered the opinion of the Court.

The buyers of a house and lot brought suit for recovery of the deposit they had made, on the claim of a breach of contract by the sellers. The sellers counterclaimed, alleging that it was the buyers who had breached the contract and so caused them great damage in excess of the amount of the deposit. Judge Berry, sitting without a jury, found that the buyers had not been legally justified in refusing to settle for the property they had agreed to purchase, and had forfeited their deposit. With regard to the counterclaim, he held that the proper measure of damage in a suit by a seller for a breach by the buyer "is the difference between the contract price and the market price at the time of breach, less any amount paid on account by the Buyer" and that no proof of such difference had been shown. Each side appealed from the judgment against them.

In this Court the sellers, the appellants, urge that the true measure of damage is "not the difference between the contract sale price and the fair market value, as of the date of breach, but rather their actual damages, which necessarily and consequentially flow from the breach and which were fairly within the contemplation of the parties at the time of the execution of the contract, especially where no forfeiture of deposit has been asserted by the pleadings."

If the contention had to be decided, there would be presented for decision interesting questions as to whether the rule applied by the trial court is correct and all inclusive or, whether other expenses which the sellers claim, such as cost of a survey and of termite inspection, were also recoverable, as well as whether the trial court's measure included in it either or both of the elements of special damage and whether the failure to

establish damage under the general rule permitted recovery of special or additional damage, if otherwise they would not be recoverable. In the view we take of the case we do not reach any of these questions or the adequacy of the testimony as to damages and the court's rulings thereon. (The record gives indication that the sellers suffered little, if any, damages over and above the amount of the deposit they retained.) We think that the trial court's determination that the buyers had breached the contract was justified and that under the agreement of the parties, expressed in their contract, the deposit was forfeited to the sellers as liquidated damages. (In their cross-appeal the buyers challenge the correctness of the decision that they breached the contract but not the forfeiture of the deposit, if they were in the wrong.)

The sellers offered their home property, located on Sudbrook Lane in Pikesville, for $28,000 in fee. The buyers offered $20,000 for the house and the rear portion of the lot. Intending to get their total asking price by selling the Sudbrook Lane frontage for $8,000, the sellers agreed to sell and the buyers agreed to buy 204 Sudbrook Lane with a proviso in the written contract that "the actual property to be conveyed hereunder is as shown on the accompanying sketch, which is attached hereto and made a part hereof, and a survey will be made at the expense of the Sellers to determine a proper metes and bounds description." The rough freehand sketch showed two lots fronting on Sudbrook Lane of a depth of one hundred forty-five feet, with a twenty-five foot right of way between them. The rear lines of these lots were to be the front line of the lot being bought. The house is shown as being approximately in the middle of the proposed rear lot. A deposit of $1,000 was put down.

When the survey was first made, it became apparent that if the depth of the front lots, which were to be kept by the sellers, was set at one hundred forty-five feet from the true boundary point, the front line of the lot being bought would be very close to the house, much closer than the parties anticipated when they stepped off what they conceived to be one hundred forty-five feet from a point on Sudbrook Lane they thought was the boundary point. (They identified the tentative front

line of the lot being sold by two large trees, although on which side of the line they would be was not known. The buyers hoped to have the trees on their new lot but there was no agreement that they would.) The sellers, in order to give the buyers what had been agreed to, told the surveyor to make the depth of each retained lot one hundred thirty-five feet. The property was then "restaked" by the surveyor, who established the outer lines of the lot at approximately one hundred thirty-five feet and the inner lines at approximately one hundred thirty-eight feet, and a plat was finally prepared. The buyers refused to settle on the ostensible ground they were not getting what the sellers had agreed to sell them, although it would appear that the fact the trees were not on their lot, as established by the survey, was the breaking straw. The surveyor testified that the depth he established for the front lots gave the lot being sold a front boundary line approximately that contemplated by the parties after they had stepped off originally one hundred forty-five feet from the supposed boundary point at Sudbrook Lane.

Judge Berry found from the testimony that "while it is true that the depth of the lots facing Sudbrook Avenue had to be reduced this was of no interest to the Zeilers [the buyers] and, after this was done, the Macons [the sellers] were in a position to convey substantially what the parties intended." He concluded that the buyers, having been offered what they agreed to buy were not legally justified in refusing to settle and could not recover the deposit. We cannot say that his findings were clearly erroneous and we think his conclusions of law were right.

In *Alois v. Waldman,* 219 Md. 369, in a suit to recover a deposit paid under a contract to purchase a house and adjoining land, it was held that the buyers could not prevail because they had breached the contract. The sellers had filed a counterclaim for damages flowing from the breach, some of which had been allowed in the trial court. This action was reversed on the ground that the buyers had forfeited the deposit and the sellers retained it as liquidated damages. Various authorities were cited to show (a) that although the contract was silent on the point, the retention of the deposit by the sellers could

be supported on the theory that it was in the nature of liquidated damages rather than a fund out of which actual damages were to be paid, and (b) "that it has been held that one cannot forfeit the deposit as liquidated damages and at the same time make claim for actual damages." It was held that the sellers, the cross-claimers of damages, "could not be allowed damages over and above the forfeiture of the deposit."

We think the *Alois* case is controlling and that its result on the aspect of damages is called for here by the contract provision for forfeiture to the sellers of $1,000 of the buyers' money, if they do not go through with their bargain. We see nothing in the contract or the circumstances of the transaction revealed by the record to negate the inference drawn in *Alois* that the deposit was to be forfeited as liquidated damages. There is nothing to show that the retention of five per cent of the purchase price was not to compensate the sellers, in an agreed sum, for whatever loss they suffered as a result of the default and nothing to suggest that the deposit was to be retained as a fund from which damages were to be paid, with a refund to the buyers if damages actually were less than $1,000 and a right in the sellers to go against the buyers for the excess if damages exceeded $1,000. *Cf. Quillen v. Kelley,* 216 Md. 396.

*Judgments affirmed, costs to be divided equally*