SILER ET UX *v.* MARSHALL, ET AL.

[No. 372, September Term, 1967.]

*Decided November 12, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN, SINGLEY, and SMITH, JJ.

*Robert A. Wallace,* with whom was *Harry L. Wolpoff* on the brief, for the appellants.

*Henry E. Weil,* with whom was *Shapiro & Weil* on the brief, for the appellees.

HAMMOND, C. J., delivered the opinion of the Court.

In May 1965 appellants, hereinafter called Siler, agreed in writing to sell to appellees, hereinafter called Marshall, some 17 acres of land in Montgomery County at $1.25 a square foot, or $916,905.33. A deposit of $25,000 was paid by the purchasers. The contract provided as follows:

> "Settlement. Time is of the essence of this Contract and within sixty days from: (a) the date of acceptance hereof by the Seller or (b) or as soon thereafter as a report on the title can be secured if promptly ordered,

and an appointment can be made with the Title Company for settlement, the Seller and Purchaser are required and agree to make full settlement in accordance with the terms hereof. If the Purchaser shall fail to do so, the deposit herein provided shall be forfeited as agreed as liquidated damages, and the Purchaser shall thereby be relieved from further liability hereunder.

\* \* \*

"The entire deposit shall be held by Agent and Ballman & McDonald Atty. as escrow agents until settlement hereunder is made and the party making settlement is hereby authorized and directed to deduct the aforesaid commission from the proceeds of sale and pay same to said Agent. If the sale is not closed because of the Purchaser's default one-half of said forfeited deposit shall be paid to the Agent, and the balance of the forfeited deposit shall be paid one-half to Richard B. Thibadeau and Lena Dunkum [holders of overdue mortgages on the property] and one-half to Sellers."

Siler was under pressure because he was in default on mortgages on the property held by Thibadeau and Dunkum, and in late June urged Marshall to settle. A meeting was held on July 6, at which Marshall advised Siler that he could not then settle for lack of cash, having been unwilling or unable to obtain financing, and that he wanted a further extension of time. Marshall would not set a time when he would settle, but asked about a right-of-way of the telephone company which he said had shown up in the title report. Siler offered on July 6 to provide a title policy protecting Marshall from the effect, if any, of the right-of-way, which, after the property had been resold by Siler to another, Marshall admitted was not on or over the property and would not adversely affect marketability or use of the property. On July 7 Siler wrote Marshall by registered mail that the time for settlement had expired on July 2 and that unless settlement were made by July 12, he, Siler, would consider the contract in default and terminated "and the deposit forfeited in accordance with the terms of said contract."

Marshall requested a conference, which was held on August 5, attended by the principals, their lawyers and the real estate agent, at which Marshall announced that he would not settle at the contract price of $1.25 a square foot because the property was no longer desirable as zoned, that it should be rezoned to its best use and that if so rezoned, it would be worth no more than $1.00 a square foot. He said if Siler would agree to this newly offered price he would be prepared to settle within thirty days. As a persuasive suggestion that it would be best for Siler to accept this new offer, Marshall informed Siler that he now owned the mortgages formerly owned by Thibadeau and Dunkum and could institute foreclosures immediately unless Siler agreed to the proposed new contract. Undaunted, Siler told Marshall that the contract had been breached and that a new and more attractive purchaser would be sought. On September 9, Siler completed a resale of the property for $68,-447.13 less than the original contract price and suffered additional damage, claimed to be $6,723.54. The mortgages Marshall had bought from Thibadeau and Dunkum were paid from the proceeds of the resale.

On September 13, Marshall attempted to lock the barn door after the horse had been stolen by writing Siler that the telephone easement was no longer of consequence and he was prepared to settle by October 15.

On January 10, 1966, Siler sued Marshall at law for the actual damages he claimed Marshall had caused him by failing to consummate his contract to purchase the property. The escrow agent holding the $25,000 deposit was not made a party. At about the time of this law suit, the escrow agent filed a bill of interpleader on the equity side of the Circuit Court for Montgomery County, naming as defendants all the possible claimants of the $25,000 deposit—Siler, Marshall, the real estate agent, and Thibadeau and Dunkum. The $25,000 was deposited in the registry of the Circuit Court where it now peacefully and patiently reposes.

Jurge Shearin, at the close of Siler's testimony in the law suit, granted a motion to dismiss and entered judgment for Marshall for costs. His reasons were that Siler's sole right to recover, "assuming without deciding, that [Marshall] in fact

breached the contract in question" was "an action for the agreed portion of the deposit," and that the escrow agent, who had not been sued, was an indispensable party. He added:

> "The most appropriate vehicle for ultimate determination of the rights of all parties contending for the $25,000 deposit would appear to be the interpleader action already pending in this Court."

We agree with Judge Shearin that the most Siler can recover is his specified share of the $25,000 deposit. As long ago as the case of *Geiger v. The Western Md. R. R. Co.*, 41 Md. 4, 15, our predecessors said:

> "[W]here the parties have declared in clear and unambiguous terms that a certain sum shall be paid by way of compensation, upon a breach of the contract * * * the damages arising from the breach of which are uncertain, and incapable of being ascertained by any fixed pecuniary standard, and especially where the contract provides that the sum so claimed shall be paid as *liquidated damages,* the sum so fixed and agreed upon will be considered as compensation for damages resulting from the breach and not a penalty."

In *Cowan v. Meyer*, 125 Md. 450, 463, the Court adopted the language of Judge Pattison for the Court in *Baltimore Bridge Co. v. United Railways and Electric Co.*, 125 Md. 208, 214-215, that:

> " 'From the authorities given above, it may be stated as a settled rule of law, that where the parties, at or before the time of the execution of the contract, agree upon and name a sum therein to be paid as liquidated damages in lieu of anticipated damages which are in their nature uncertain and incapable of exact ascertainment, that the amount so named in the agreement will be regarded as liquidated damages and not as a penalty, unless the amount so agreed upon and inserted in the agreement be grossly excessive and out of all proportion to the damages that might reasonably have been ex-

pected to result from such breach of the contract. And whether it is excessive or whether the damages are incapable of exact ascertainment should be determined from the subject-matter of the contract considered in the light of all the surrounding facts and circumstances connected therewith and known to the parties at the time of its execution.' "

*Cowan* also held that after a breach of a contract in which there is a provision for liquidated damages, the actual damages, whether less or more than the stipulated amount, became immaterial since the parties are bound by their stipulation. It was said:

"[T]he effect of the clause we are considering is to substitute the amount agreed upon as liquidated damages for the *actual* damages resulting from the breach, and, as said by Mr. Brantly in his excellent work on *Contracts,* 'the party who failed to perform the contract will not be heard to say that the other party has not suffered any damages from the breach, or that his loss did not equal the sum named. The very object of the clause is to prevent such a controversy.'" [125 Md. at 465]

In *Alois v. Waldman,* 219 Md. 369, the contract was silent as to the disposition of the deposit upon default by the buyer of land. The buyer did default and this Court said:

"In the instant case it would seem that the retention of the deposit by the sellers could be supported by the theory that it was in the nature of liquidated damages rather than a penalty * * * It has been held that one cannot forfeit the deposit as liquidated damages and at the same time make claim for actual damages * * *." [219 Md. at 377]

This Court held that the sellers "could not be allowed damages over and above the forfeiture of the deposit."

In *Macon v. Zeiler,* 233 Md. 160, we found that the trial court's finding that the buyers had breached the land contract

was proper but disagreed with his conclusion that actual damages were allowable, since the parties had agreed expressly in the contract that in such event the deposit would be forfeited to the sellers. We said:

> "We think the *Alois* case is controlling and that its result on the aspect of damages is called for here by the contract provision for forfeiture to the sellers of $1,000 of the buyers' money, if they do not go through with their bargain. We see nothing in the contract or the circumstances of the transaction revealed by the record to negate the inference drawn in *Alois* that the deposit was to be forfeited as liquidated damages. There is nothing to show that the retention of five per cent of the purchase price was not to compensate the sellers, in an agreed sum, for whatever loss they suffered as a result of the default and nothing to suggest that the deposit was to be retained as a fund from which damages were to be paid, with a refund to the buyers if damages actually were less than $1,000 and a right in the sellers to go against the buyers for the excess if damages exceeded $1,000. *Cf. Quillen v. Kelly,* 216 Md. 396." [233 Md. at 164]

As in *Macon* and *Alois,* there is nothing in the contract now before us or in the surrounding circumstances to indicate that the sum agreed on as damages in the event Marshall defaulted was other than liquidated damages. As in *Macon,* the damage clause was self-executing in the event of a breach—"the deposit * * * *shall be* forfeited as agreed * * *," and in addition provided that "the Purchaser shall *thereby be* relieved from further liability" (emphasis added). Siler's recovery under his own binding agreement is limited to the amount of the deposit.

We think Siler offered prima facie proof of a complete default by Marshall, proof which, if Marshall had not been able to refute it (and the escrow agent had been a party), would have entitled Siler to a judgment for $6,250 of the $25,000 deposit.

Marshall urges that Siler cannot recover because he did not tender a deed or, later, give clear and unmistakable notice of

his intention to forfeit the deposit. There was no need to explicitly tender a deed. Siler told Marshall he was ready, willing and able to settle at any time up to July 12 and Marshall's repudiation of the contract obviated the need for doing what obviously would have been a futile act. *Livingston v. Green Prop. Inc.*, 222 Md. 354, 357. Siler's letter to Marshall of July 7 was clear and unmistakable notice that the contract would be in default as of July 12 unless settlement was made before then, and that upon default the self-executing provisions of the liquidated damage clause of the contract would come into play.

In the interpleader case brought by the escrow agent, all the parties are before the court. We think the case must be remanded without affirmance or reversal to permit the transfer of the case, including the testimony adduced by Siler, to the equity side of the circuit court to become part of the interpleader case under the provisions of Maryland Rule 515. The Rule provides:

> "Where it shall appear that the plaintiff is or may be entitled to some relief or remedy, but not in the particular court, or on the side of the court in which the action is brought or the relief is prayed, the plaintiff shall not on that account be nonsuited or the action dismissed; but the action shall be transferred by an order to such proper court or docket, either of equity or law, in the same county, as the nature thereof may require, and upon such terms as to the payment of costs as the court may order."

When the matter is heard in equity, Marshall will of course be afforded the opportunity to controvert and, if possible, refute Siler's proof of breach by Marshall. If he is unsuccessful, a decree should be entered ordering the escrow agent to pay Siler $6,250.

*Case remanded without affirmance or reversal for the further proceedings indicated in the opinion, costs to be divided equally.*