Billy D. SHARP and Kathy M. Sharp,
Plaintiffs-Appellants,

v.

Robert F. LANCE and Robert F. Lance
and Associates, Inc.,
Defendants-Appellees.

Supreme Court of Tennessee.

July 21, 1980.

Wm. Landis Turner, Keaton, Turner & Peluso, Hohenwald, for plaintiffs-appellants.

William P. Sutherland, Nashville, for defendants-appellees.

## OPINION

BROCK, Chief Justice.

This is a breach of contract action brought by the plaintiffs as a result of the defendants' alleged refusal to repurchase a house as promised. In the General Sessions Court for Lewis County the plaintiffs recovered a default judgment in the amount of $2,687.92 plus interest and on appeal to the circuit court the judgment was affirmed less a $350.00 credit for rent. In the Court of Appeals the trial court was reversed and the plaintiffs' suit was dismissed for their failure to tender a deed to the defendants; the Court of Appeals was of the opinion that such a tender was a condition precedent to the duty of the defendants to repurchase.

On September 6, 1974, the defendant Robert F. Lance and Associates, Inc., conveyed the house in question by warranty deed to the plaintiffs, Mr. and Mrs. Sharp.

On the same day the plaintiffs executed a deed of trust on the real estate to Noel-Palmer Mortgage Company. Being a member of the armed forces, Mr. Sharp was able to obtain a Veterans Administration guaranty on the mortgage.

As an inducement to purchase the house the defendant Robert F. Lance offered to repurchase the property upon demand within one year. On September 7, 1974, Lance executed the following agreement which was handwritten:

"7 Sept. 1974

"I agree to repurchase or purchase the home at 646 Thomas St. Hohenwald, Tenn. 38462 from Mr. & Mrs. Billy D. Sharp up to one year from above date if they should become unhappy with property. I agree to pay their cash equity in the property at time of closing & will assume their 1st mortgage & further agree to make all payments on time not to exceed 5 days of being late.

/s/ Robert F. Lance
President
Lance & Assoc., Inc.
2704—12th Ave. S.
City
Nashville, Tenn. 37204"

The narrative transcript reveals that when the house was first shown to the Sharps by Mr. Lance, it needed several repairs including a new front door, replacement glass in a storm door, a new living room window, and some plumbing repairs to the kitchen sink. The inspector for the Veterans Administration also required that the drain pipes and gutters undergo repairs in order to maintain the Veterans Administration guaranty. At trial the proof was unclear as to how many of these repairs Mr. Lance had accomplished when the Sharps decided to move out.

After the closing the plaintiffs immediately moved into the house. A short time later the mortgage payment book arrived, but the payments were somewhat higher than the Sharps had expected. Mr. Lance was contacted and, according to Mr. Sharp, the Sharps were instructed to forward the book to him for examination. It is unclear

whether the book was ever returned to the Sharps but it is clear that no payments on the mortgage were ever made by either the plaintiffs or the defendants.

When the Sharps were notified that foreclosure proceedings would soon begin, Mrs. Sharp called upon Mr. Lance to repurchase the house which he agreed to do. A blank warranty deed form was sent to the Sharps and they testified that Mr. Lance advised them that they would have to return the signed deed before he could repurchase the house. Lance denied giving any such advice, but in either event the Sharps refused to sign the form because it was blank. Mr. Sharp also testified that at some point in time he was advised that Mr. Lance could not repurchase the house because of "some regulation." Lance also denied making this statement.

On December 21, 1974, approximately two months after the plaintiffs received the blank deed form, the attorney for the plaintiffs informed Mr. Lance by letter that (1) the Sharps had moved out, (2) the Sharps still expected Lance to repurchase the house, (3) foreclosure was imminent, and (4) the Sharps expected Lance to protect them from a deficiency judgment.

Lance never responded to this letter and on April 1, 1975, foreclosure took place resulting in a deficiency of $2,687.90. Noel-Palmer Mortgage Company then called upon the Veterans Administration to honor their guaranty agreement and the government paid off this deficiency. On September 26, 1975, Mr. Sharp was advised by letter from the Veterans Administration that "[u]ntil such time as you repay the government the same amount of the claim paid in your behalf you may not be considered for further loan guaranty benefits."

The plaintiffs filed suit on July 23, 1977, asserting damages in the amount of the deficiency plus interest. As noted above the trial court awarded the amount claimed less $350.00 for rent during the two and one-half months that the Sharps lived in the house. In reversing the trial court the Court of Appeals found that the agreement executed by defendant Lance contained an implied condition precedent which required the Sharps to prepare, execute and tender a deed to the defendants. We disagree.

I

■ The general rule is that where the covenants of a contract are mutual and dependent the seller of real property must tender a deed as a condition precedent to an action for damages to recover for the buyer's breach of contract. 92 C.J.S. *Vendor & Purchaser* § 530 (1955); *Walsh v. Bellamy*, 68 S.D. 291, 2 N.W.2d 102 (1942); *Will-O-Way Development Co. v. Mills*, 122 Ohio St. 242, 171 N.E. 94 (1930). However, "[i]f the covenants as to payment and conveyance are independent the vendor need tender no deed before bringing an action for damages for breach." 92 C.J.S. at § 530; *Foley v. Dwyer*, 122 Mich. 587, 81 N.W. 569 (1900); *Robinson v. Heard*, 15 Me. 296 (1839). *See also Greenbrier Homes v. Cook*, 1 Mich.App. 326, 136 N.W.2d 27 (1965); 35 A.L.R. 108 (1925).

■ There have been very few cases addressing this question but it has also been firmly established in other jurisdictions that the actions of a purchaser can obviate the need for the tender of a deed when it is clear that such an act would have been futile. *See Siler v. Marshall*, 251 Md. 342, 247 A.2d 385 (Md.App.1968); *Davis v. Lacy*, 121 F.Supp. 246 (E.D.Ky.1954); *McDaniel v. Daves*, 139 Va. 178, 123 S.E. 663 (1924); *Seltzer v. Greene*, 117 A. 532 (R.I.1922); *Schramm v. Hoch*, 241 S.W. 1087 (Tex.Civ. App.1922).

■ The purchase of real estate involves a meeting of the minds and absent an agreement to the contrary a warranty deed and the purchase price are simultaneously tendered at the closing. Thus, neither party is normally required to tender his *quid pro quo* until it is apparent that the other is also willing to make a tender of performance. However, in the case at bar the defendant Lance unilaterally and independently agreed to repurchase the house from the Sharps "if they should become unhappy with property." He also agreed "to pay

their cash equity," "assume their 1st mortgage" and "make all payments on time." Under these circumstances we are of the opinion that the defendants undertook an obligation to act and were required to take affirmative steps to satisfy their obligations upon proper notification. The defendants concede that they were properly notified; but the only step the defendants took to satisfy their contractual duties was to send a blank warranty deed form to the plaintiffs. We hold in this case that this sole step was insufficient and, therefore, the defendants must suffer the consequences of foreclosure.

■ We also conclude that Lance's promise to repurchase was independent and unilateral and that the actual tender of a deed was not a condition precedent to an action for damages. Moreover, even assuming that a tender was required we find that when defendant Lance failed to respond to the letter sent by the plaintiff's attorney on December 21, 1974, he waived any objections to that irregularity. *See* 77 Am. Jur.2d *Vendor and Purchaser* § 288 (1975); 92 C.J.S. *Vendor & Purchaser* § 531 (1955); *Livingston v. Green Properties, Inc.,* 222 Md. 354, 160 A.2d 594 (Md.App.1960); *Hazelton v. LeDuc,* 10 App.D.C. 379 (1897). It also follows that the actions of Lance obviated the need for the tender of a deed since under these circumstances such an act would have been futile. *See Siler v. Marshall, supra.*

## II

■ With respect to the damages awarded by the trial court, the defendants assert that "[e]ven if Mr. Lance and the corporate defendant could properly be said to be in breach of the contract, the plaintiffs have sustained no damage." While it is true that the plaintiffs have suffered no actual out-of-pocket loss, they have suffered harm to their credit in the sense that they are no longer eligible for Veterans Administration loan guaranty benefits. Moreover, the plaintiffs are still obligated to the Veterans Administration for the deficiency even though this debt has been satisfied.

Thus, the plaintiffs were damaged in the amount of the deficiency and are still liable to the Veterans Administration for this sum. Upon the plaintiffs' recovery, the Veterans Administration may still have the right to be indemnified for their loss; and even if the plaintiffs never reimburse the government they will have lost the valuable right to obtain future Veterans Administration loan guarantees. We conclude that the damages at issue were fairly within the contemplation of the parties, were proximately caused by the defendants' failure to perform their contractual obligations, and are therefore recoverable by the plaintiffs.

The Court of Appeals is reversed, the judgment of the trial court is reinstated and this cause is remanded for proceedings consistent with this Opinion. Costs incurred upon appeal are taxed against the defendants.

FONES, COOPER and HARBISON, JJ., concur.