REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No.  1246

September Term, 2013

---

GREENTREE SERIES V, INC.

v.

C. LARRY HOFMEISTER, JR., ET AL.

---

Meredith,
Wright,
Salmon, James P.
   (Retired, Specially Assigned),

JJ.

---

Opinion by Salmon, J.

---

Filed: April 29, 2015

The appellant in this case is Greentree Series V, Inc. (hereafter "Greentree"); the appellees are C. Larry Hofmeister, Jr., Craig B. Leavers, and Stephanie H. Hurley, Substitute Trustees (hereafter, collectively "the Substitute Trustees") and Wells Fargo Bank, N.A.

The legal issue presented is one of first impression and arises because Greentree placed the winning bid on land sold by the Substitute Trustees at a foreclosure sale, then put down a $33,197 deposit, but failed to go through with the purchase after the circuit court ratified the sale. As a consequence, the Substitute Trustees sold the property a second time. When the property was resold, Greentree was once again the high bidder, having bid $244,000. which was $72,000 more than it had bid initially. Ultimately, the court ratified that sale and Greentree, after some delay, went through with the sale.

In the auditor's corrected amended account, he gave Greentree credit for the $33,197 deposit. The Substitute Trustees and Wells Fargo filed exceptions to the auditor's corrected amended account and the exceptions were heard in the Circuit Court for Anne Arundel County. The circuit court overruled the auditor and held that Greentree was not entitled to the return of all or any part of its deposit, even though, after payment of all interest and expenses, Wells Fargo had substantially more money in hand than it would have had if Greentree had not defaulted initially. In this timely appeal, Greentree raises one question, which it phrases as follows:

> May a court . . . forfeit entirely the deposit of a defaulting purchaser at foreclosure without regard to actual loss or damage resulting from the subsequent resale?

# I.

## UNDISPUTED FACTS

In 2007, Joseph A. Wheeler signed a $320,000 promissory note that was secured by a deed of trust. That deed of trust encumbered property located in Anne Arundel County known as 10 River Drive, Severna Park, Maryland (hereafter "the Property"). The grantors of the deed of trust were Negar Wheeler and Joseph Wheeler. Payments were not made when due on the note and as a consequence the Substitute Trustees, on behalf of Wells Fargo, the holder of the promissory note, filed a foreclosure action in the Circuit Court for Anne Arundel County on May 12, 2011. The terms of the sale, as set forth in a newspaper advertisement that was published in Anne Arundel County prior to the sale, read, in pertinent part, as follows:

> A deposit of $33,000.00 will be required at the time of sale . . . [b]alance of the purchase price is to be paid in cash within ten (10) days of the final ratification of sale[.] . . . If payment of the balance does not take place within ten days of ratification, the deposit will be forfeited and property will be resold at the risk and expense of the defaulting purchaser.

A public sale of the Property was held by the Substitute Trustees on June 30, 2011. Greentree's bid of $172,000 was the highest received. Greentree then gave the Substitute Trustees a deposit in the amount of $33,197, which was $197 more than required. The sale was ratified by the Circuit Court for Anne Arundel County on August 29, 2011. Greentree, however, failed to settle on the Property within ten days as required, and as a consequence, Wells Fargo and the Substitute Trustees, on September 26, 2011, filed a pleading entitled:

2

"Petition to Order Resale of Property at Defaulting Purchaser's Sole Cost and Expense." The circuit court judge who held the hearing on the petition provisionally denied it on January 11, 2012. The judge explained, in a footnote to his order, that Greentree had demonstrated good faith and, due to that demonstration, Greentree would have thirty additional days to "follow the appropriate course of action" and to settle on the Property. The judge's footnote also said that if Greentree did not settle on the Property within thirty days of January 11, 2012, "the [P]roperty shall be resold at the defaulting purchaser's cost and expense." Thereafter, the Substitute Trustees filed an affidavit stating that Greentree, in the past thirty days, had not even established contact with them and had, once again, failed to settle on the Property. Based on that affidavit, an order was docketed, on February 10, 2012, which directed that the Property "shall be resold at the risk and expense of" Greentree. That order also provided that "the deposit monies in the amount of $33,197.00 be and are hereby forfeited."[1]

---

[1] The appellees contended in the circuit court that the February 10, 2012 order constituted a final judgment, which was binding on Greentree, because Greentree did not file an appeal within 30 days of February 10, 2012. The circuit court rejected that contention, as do we.

To be considered a final judgment, an order must "determine *and conclude* the rights involved or . . . deny the appellant the means of further prosecuting or defending his or her rights and interests in the subject matter of the proceeding." *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989). *See also* Md. Code (2006, 2013 Repl. Vol.), § 12-301 of the Courts and Judicial Proceedings Article. Moreover, the ruling must "leave nothing more to be done in order to effectuate the court's disposition of the matter." *Remson v. Krausen*, 206 Md. App. 53, 72 (2012) (citations and internal quotation marks omitted).

The order docketed on February 10, 2012 authorized the Substitute Trustees to conduct a second foreclosure sale; after the second sale the court would be obligated to consider whether to ratify that second sale. Consequently, the Order docketed on February

(continued...)

3

The Property was sold for the second time at public auction on April 12, 2012. Greentree's bid of $244,000 was the highest received. Greentree put down a second deposit, this time in the amount of $35,000, which was $10,000 more than the amount required in the advertisement that immediately preceded the resale. The second sale was ratified by the Circuit Court for Anne Arundel County on June 14, 2012. Once again, Greentree failed to go to settlement as scheduled. As a result, an order directing the sale of the Property for a third time was entered on August 9, 2012. That order, however, permitted the Substitute Trustees, in their discretion, to go to settlement with Greentree at any time before the resale. On October 25, 2012, which was the date that the Property was scheduled to be sold for the third time, Greentree finally went to settlement.

The court auditor filed his first report in December of 2012. That report contained a miscalculation concerning the total amount owed on the underlying debt. Also, the first auditor's report treated Greentree's initial deposit of $33,197 as forfeited. Greentree filed exceptions challenging the auditor's treatment of the $33,197 deposit. The auditor, on April 1, 2013, filed an amended auditor's report in which he addressed the problem concerning the total debt amount. The amended report once again treated the first deposit of $33,197 as forfeited. The auditor also treated the second deposit of $35,000 as forfeited. Again,

_____

[1](...continued)
10, 2012 was not a final judgment because it created further steps to be completed prior to disposition of the entire matter.

4

Greentree filed exceptions. On April 19, 2013, the auditor filed a "corrected amended audit" in which he stated that expenses incurred by the Substitute Trustees as a result of the resale totaled $15,591.35. This time he ruled, however, that the $33,197 deposit should be returned to Greentree and that the second deposit of $35,000 be credited to Greentree.

The Substitute Trustees and Wells Fargo filed exceptions to the corrected amended auditor's report (hereafter "the final auditor's report"). On July 19, 2013, a hearing was held in the Circuit Court for Anne Arundel County to consider the exceptions. The main issue presented at the hearing was whether Greentree was entitled to the return of its initial $33,197 deposit. The circuit court, in a written opinion filed on August 12, 2013, ruled that Greentree was not entitled to a return of that deposit. The court noted that by virtue of Greentree's failure to go to settlement initially, the Substitute Trustees had incurred additional expenses in the amount of $15,591.35 and interest on the debt had increased by $17,788.26, which was calculated at $61.98 per day. Therefore, "the total cost" of having to resell the Property was $33,379.61 ($17,788.26 + $15,591.35), which was considerably less than the $72,000 [$244,000 less $172,000] additional monies realized from the second sale. Put another way, even if the first deposit had been returned to Greentree, the Substitute Trustees, after the second sale, realized $38,620.39 ($72,000 - $33,379.61) more than they would have received if Greentree had gone to settlement as scheduled on the first sale.

In reaching her decision, the judge opined that she could not justify the forfeiture of the deposit based on the terms of sale that appeared in the newspaper ad. The court gave the following explanation:

> Since there were no actual damages from the resale, forfeiting the deposit pursuant to the first sale advertisement would be akin to enforcing a penalty. Furthermore, since damages were ascertainable at the time of the resale, the deposit forfeiture provision in the first sale advertisement, which is considered a liquidated damages clause, is unenforceable. *See Lee Oldsmobile, Inc. v. Kaiden*, 32 Md. App. 556 (1976) (holding that where the presence of a resale remedy under the Uniform Commercial Code rendered damages ascertainable and a liquidated damage clause thus unenforceable). Thus, the first sale advertisement alone does not provide the [c]ourt with the authority to forfeit the First Deposit.

Having decided that application of contract law principles would not justify the forfeiture of the deposit, the court then segued into a discussion of equitable principles. Quoting from *Simard v. White*, 383 Md. 257, 317 (2004), the judge said that "the underlying origins of the proper priorities to be applied to sums received at any foreclosure sale, be it an initial sale or a resale, have been for over two hundred years to primarily protect the interests of mortgagors and mortgagees." The circuit court then noted that the Court of Appeals said in *Simard* that "courts have sought outcomes that are equitable and fair both to the mortgagee and to the mortgagor and other creditors." *Id*. The circuit court also observed that the Court noted in *Simard v. White*, that "[i]t is the defaulting purchaser's exposure, on the other hand, that somewhat differs from that of the other parties." *Id*. at 320. According

6

to the circuit court, the *Simard* Court, 383 Md. at 320-21, "indicated that the interests of the mortgagor and the mortgagee are paramount to those of the defaulting purchaser[.]"[2]

The circuit court's written opinion stressed that if Greentree were allowed to receive back its initial deposit, the deficiency judgment that would be entered against the maker of the note would be $149,751.25, but if the defaulting purchaser were not entitled to a return of the deposit, any possible deficiency judgment would be "lowered considerably" (i.e., lowered by $33,197).

Next, the court indicated, although it did not say so explicitly, that Greentree's request for the return of its initial deposit was barred by the doctrine of unclean hands. Citing *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 729-30 (2007), the court said that the unclean hands doctrine provides that "courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, or inequitable conduct in the matter with relation to which he seeks assistance." The judge did not explicitly find that Greentree's conduct was "fraudulent, illegal, or inequitable," but, implied that this was the case. The court emphasized that, due to Greentree's default, "more than a

_____

[2] In support of that statement, the circuit court quoted from *Simard v. White*, 383 Md. at 320-21 as follows:

> [T]he Court, then, has remained cognizant of the need to protect the interests of the mortgagor, who has not been relieved of his liability for deficiency on the mortgage at any time during the sale and resale in the foreclosure process, as well as the interest of the mortgagee who has invoked the power of the court in pursuit of satisfaction of the debt owed to him.

7

year had passed since the first sale was ratified on August 29, 2011." The circuit court concluded its opinion by stating:

> Now Greentree is asking the [c]ourt to reconsider Judge Silkworth's February 10, 2012, Order and return the First Deposit. The [c]ourt is not inclined to do so. Md. Rule 14-305(g) provides that "if the purchaser defaults, the court, on application and after notice to the purchaser, may order a resale at the risk and expense of the purchaser or *may take any other appropriate action*." Taking into consideration Greentree's conduct in not making it to settlement on two occasions after sales were ratified, and the paramount interests of the mortgagor and mortgagee in reducing the deficiency judgment as well as recovering outstanding debt, the [c]ourt finds that it is appropriate to forfeit the First Deposit.

## II.

### A. Contract Principles

As will be discussed *infra*, the primary argument made by Greentree in this appeal is that under the dictates of Md. Rule 14-305(g), the circuit court did not have the discretion to order both a resale of the Property at the defaulting owner's risk and expense and to order as well a forfeiture of the deposit made by the defaulting purchaser. But before reaching that issue, we will address two subsidiary ones that were raised below and decided by the circuit court. The first of those issues is whether the forfeiture of the deposit can be justified based on Greentree's breach of the terms of sale that were set forth in the newspaper advertisement that preceded the June 30, 2011 auction. As mentioned *supra*, the advertisement said that if the purchaser defaulted, the Property would be resold at the risk and expense of the defaulting purchaser and the $33,000 deposit would be forfeited.

8

In *White v. Simard*, 152 Md. App. 229, 241 (2003), *aff'd*, 383 Md. 257 (2004), Judge

Sally D. Adkins, speaking for this Court, said:

> The purchase and sale transaction at any judicial sale is governed by general principles of contract, with the court acting as vendor:
>
> > "In all sales made under the authority of a decree of a court of equity, the court is the vendor, acting for and in behalf of all parties interested. The contract of sale is a transaction between the court as vendor, and the purchaser; and the contract is never regarded as consummated until it has received the sanction of the court. . . ." "Before ratification the transaction is merely an offer to purchase which has not been accepted."
>
> *Talbert v. Seek*, 210 Md. 34, 43, 122 A.2d 469 (1956) (quoting [*Edgar G.*] *Miller*, [Jr., Equity Procedure] § 510 at 602 [1897], and *Hanover Fire Ins. Co. v. Alexander Brown & Sons*, 77 Md. 64, 71, 25 A. 989 (1893)); *see also McCann v. McGinnis*, 257 Md. 499, 505, 263 A.2d 536 (1970)("The court is the vendor in the case of a sale under the power contained in a mortgage, just as it is a vendor in any other chancery sale.").
>
> *       *       *
>
> In the context of a foreclosure sale, the contract of sale is not final until the court ratifies the sale. Such a sale
>
> > does not pass the title unless it is ratified and confirmed. The [c]ourt is the vendor acting through its agent the trustee . . . . He reports to the [c]ourt the offer of the bidder for the property; if the offer is accepted, the sale is ratified, and thereupon, and not sooner, the contract of sale becomes complete. Before ratification the transaction is merely an offer to purchase which has not been accepted.
>
> *Hanover Fire Ins. Co.*, 77 Md. at 71, 25 A. 989; *see also Plaza Corp. v. Alban Tractor Co., Inc*, 219 Md. 570, 578, 151 A.2d 170 (1959)("When [the trustee] reported the offers of the bidders for the property to the court, no contracts of sale had been completed and no title had been transferred to the prospective purchasers")[.]

*Id*. at 241-42.

Judge Adkins also pointed out in *White* that "trustees must act equitably toward contract purchasers" (citing *Stewart v. Devries*, 81 Md. 525, 526-27 (1895)) and that courts will strike down contracts that are contrary to public policy. *Id*. at 249.

At first blush, it might appear that the issue of whether the defaulting purchaser's deposit should be forfeited could be resolved by simply applying the words of the newspaper advertisement, which said, in plain English, that the $33,000 deposit would be forfeited if the purchaser did not pay the balance due "within ten (10) days of the final ratification."

In arriving at the conclusion that the forfeiture provision was unenforceable as a penalty, the circuit court used the definition of "forfeiture" set forth in Black's Law Dictionary, (9th ed. 2009), *viz*.:

1. The divestiture of property without compensation.
2. The loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty. Title is instantaneously transferred to another, such as the government, a corporation, or a private person.
3. Something (esp. money or property) lost or confiscated by this process; a penalty.

In this appeal, neither party contends that the circuit court erred in using Black Law Dictionary's definition of "forfeiture." We agree that the court did not err in this regard. Using the aforementioned definition, if the terms of the ad were enforced, Greentree would have automatically lost all rights to the return of the deposit once it defaulted.

In *Zorzit v. 915 W. 36th Street, LLC*, 197 Md. App. 91, 102 (2011), we said "'the purchase and sales transaction at any judicial sale is governed by general principles of

10

contract, with the court acting as vendor.'" (quoting this Court's opinion in *White v. Simard*, 152 Md. App. at 241). And, as already mentioned, in the case *sub judice* the circuit court held that the forfeiture of deposit provision in the advertisement could not be enforced as a matter of contract law, because it constituted an invalid liquidated damage clause and therefore, to enforce it would be "akin" to enforcing a penalty.

In *Blood v. Gibbons*, 288 Md 268, 274 (1980), the Court was called upon to interpret a real estate contract that included the following provision:

> FORFEITURE OF DEPOSIT . . . If the Purchaser shall fail to make full settlement the deposit herein provided for may be forfeited at the option of the Seller, in which event the Purchaser shall be relieved from further liability hereunder unless the Seller notifies the Purchaser and the Broker in writing within 30 days from the date provided for settlement herein of his election to avail himself of any legal or equitable rights, other than the said forfeiture, which he may have under this contract. In the event of the forfeiture of the deposit or in the event of an award of damages by a court or a compromise agreement between Seller and Purchaser, the Seller shall allow the Broker one-half thereof as compensation for services, said amount not to exceed the amount of the full brokerage fee. . . .

*Id*. at 269-70.

In *Blood*, the contract purchaser defaulted and "the sellers assert[ed] that the forfeiture of deposit provision in the contract . . . permit[ted] the election of any legal or equitable rights in addition to the forfeiture of the deposit." *Id*. at 271.

Relying, in part, on *Casey v. Jones*, 275 Md. 203 (1975), the *Blood* Court said:

> The forfeiture of the deposit under the contract provision in this case can be supported on the theory that it was in the nature of liquidated damages rather than a penalty. *See Macon v. Zeiler*, 233 Md. 160, 163-64, 195 A.2d 687 (1963); *Alois v. Waldman*, 219 Md. 369, 377, 149 A.2d 406 (1959).

11

Liquidated damage, of course, is a specific sum of money agreed upon as the amount of damages to be recovered for breach of the agreement. *Traylor v. Grafton*, 273 Md. 649, 661, 332 A.2d 651 (1975). A provision for such damages is enforceable unless it is shown that the provision is actually designed as a penalty. *Id*. In this case there is no contention that the forfeiture clause constituted a penalty. It should furthermore be recognized that if a deposit is forfeited as liquidated damages, a claim may not then be made for actual damages. *See Macon v. Zeiler*, *supra*, 233 Md. at 164; *Alois v. Waldman*, *supra*, 219 Md. at 377. Although a deposit may be treated as a fund out of which damages may be paid, *Macon*, *supra*, 233 Md. at 164; *Alois*, *supra*, 219 Md. at 377; *Royer v. Carter*, 37 Cal. 2d 544, 233 P.2d 539, 541 (1951), the language in the instant contract provision, construed in light of *Casey*, does not permit such a construction.

We conclude that once the seller elected to declare a forfeiture of the deposit, he was thereby precluded from pursuing other legal or equitable remedies.

288 Md. at 274.

In the case at hand, the provision in the advertisement for sale of the Property that preceded the first sale is quite different from the contractual provision construed in *Blood*, *supra*. Here, if the provisions of the advertisement were enforced, there would be <u>no</u> possibility that the defaulting bidder would know, prior to resale, what damages he or she would have to pay as a result of the default.

There are three essential elements of a valid and enforceable liquidated damages clause. "First, such a clause must provide 'in clear and unambiguous terms' for 'a certain sum'[.]" "Secondly, the liquidated damages must reasonably be compensation for the damages anticipated by the breach[.]" "Thirdly, liquidated damage clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact[.]" While the language used by the parties is instructive in determining the validity of a liquidated damages clause, "[t]he decisive element is the intention of the parties—whether they intended that the sum be a penalty or an agreed-upon amount as damages in case of a breach and

12

> this is to be gleaned from the subject matter, the language of the contract and
> the circumstances surrounding its execution."

*Board of Education of Talbot County v. Heister*, 392 Md. 140, 156 (2006) (internal citations omitted).

In this case, the two remedies allowed for in the advertisement of sale, when read in tandem, do not meet any of the liquidated damages criteria as set forth in *Heister*, *supra*. At the time of Greentree's initial default, "a certain sum" to be paid upon default could not be ascertained because the amount of damage that Greentree might be forced to pay could increase after the Property was resold if the purchaser at resale bid less than was originally bid by the defaulting purchaser or the amount payable would also increase, if the new purchaser's bid was higher than the initial bid but not high enough to cover additional interest and cost of resale. The third criterion also was not met because when the Substitute Trustees ran the ad, they must have intended that the forfeiture of deposit would be a penalty against the defaulting purchaser because, no matter what happened upon resale, the Substitute Trustees (acting on behalf of Wells Fargo) would have $33,000 more in hand than they would have had if there had been no default. The second criterion was not met for the same reason. Thus, we agree (albeit for different reasons) with the circuit court's holding that the newspaper ad calling for the forfeiture of the deposit was a penalty and could not be enforced as a valid liquidated damage clause.[3]

---

[3] In their brief, the appellees do not contend that the trial judge erred in declining to

(continued...)

## B. <u>Unclean Hands Doctrine</u>

The unclean hands doctrine is applicable only if a party, who has engaged in fraudulent, illegal, or inequitable conduct, asks a court of equity for relief. *Wells Fargo Home Mortgage Inc. v. Neal*, 398 Md. 705, 729 (2007). Also, for the doctrine to be applicable, the fraudulent, illegal or inequitable conduct must relate to the matter with relation to which the party seeks assistance. *Id*. at 729-30. A party is not guilty of fraudulent or illegal conduct by merely breaking a contractual obligation. The circuit court evidently believed that the unclean hands doctrine was here applicable because Greentree's actions were inequitable in that it twice failed to go to settlement when scheduled, which resulted in a delay in settlement of over one year. But the failure to go to settlement was simply a breach of contract and, for purposes of applying the unclean hands doctrine, a party does not act "wrongfully" simply by breaching a contract. *See Simard v. Burson*, 197 Md. App. 396, 416-17, n.11 (2011); aff'd. 424 Md. 318, 332 (2012). While it is true that Greentree's contract breaches caused a delay, the Substitute Trustees (in the final auditor's report) received interest for every day of that period of delay. And, after expenses, the Substitute Trustees benefitted by their dealings with Greentree by recovering over $38,000 dollars more than they would have received if there had been no default. Under such circumstances,

---

[3](...continued)
enforce the provisions as set forth in the newspaper advertisement that called for forfeiture of the deposit in the event of default.

14

Greentree's conduct cannot be accurately characterized as "inequitable." Thus, Greentree's

claim was not barred by the unclean hands doctrine.

### C. **Md. Rule 14-305(g)**

We turn now to address Greentree's main argument, i.e., that under the provisions set

forth in Md. Rule 14-305(g) the circuit court had no right to order, on February 10, 2012, that

the deposit be forfeited <u>and</u> that the Property be resold at the risk and expense of Greentree.

Similarly, in Greentree's view the circuit court also erred in August 2013 when it, in effect,

ratified that earlier order. Greentree argues that upon default, the trustee can A) order the

sale of the property at the defaulting purchaser's risk and expense, or B) "take any other

appropriate action." Here, the circuit court interpreted Md. Rule 14-305(g) as giving it the

"discretion" to order both the forfeiture of the initial deposit <u>and</u> order a resale at the risk and

expense of Greentree. According to the circuit court, ordering the forfeiture of the deposit

amounted to "other appropriate action." In their brief, the appellees' sole argument is that

the court did have such discretion and did not abuse it under the circumstances of this case.

Md. Rule 14-305(g) reads:

Resale. If the purchaser defaults, the court, on application and after notice to
the purchaser, may order a resale at the risk and expense of the purchaser <u>or</u>
may take any other appropriate action.

(Emphasis added).

The most recent Court of Appeals case concerning Rule 14-305(g) is *Burson v.*

*Simard*, 424 Md. 318 (2012). In *Burson*, David Simard bid $192,000 at a foreclosure sale,

15

but defaulted after the sale was ratified by the circuit court. *Id*. at 322. The property was resold by the Substitute Trustees at a second sale to Stan Zimmerman, who bid $163,000. *Id*. Zimmerman also defaulted. The property was sold for a third time to a purchaser who bid $130,000. *Id*. at 323. The third sale was ratified and this time there was no default. On appeal, the Court was required to interpret the phrase "at the risk and expense of the defaulting purchaser" as used in Rule 14-305(g). *Id*. at 322. Simard readily admitted that he was liable for the risk and expense of the initial sale, but claimed that he was not responsible for the risk and expenses connected with the second resale. *Id*. at 323. In *Burson*, the Court held that "[a]bsent special circumstances, a defaulting purchaser at a foreclosure sale of property is liable, under Rule 14-305(g), for only the one resale resulting from his or her default. *Id*. at 322. In reaching that result, the *Burson* Court started out by setting forth the appropriate standard for interpreting the Maryland Rules, *viz.:*

> Because our interpretation of the . . . Maryland Rules [is] appropriately classified as [a] question[ ] of law, we review the issues . . . to determine if the trial court was legally correct[.] *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 80-81 (2004). As we observed in *Zetty v. Piatt*, 365 Md. 141, 152-153, 776 A.2d 631, 637-38 (2001):
>
>> In construing a rule, we apply principles of interpretation similar to those used to construe a statute. First, we must examine the words of the rule, giving them their ordinary and natural meaning. Where the language of the rule is clear and unambiguous, our analysis ends. Where the language of the rule is ambiguous, this Court will examine the history of the rule to aid in determining the reasonable intendment of the language used in the light of the purpose to be effectuated. The ultimate goal of this Court is to give the rule a reasonable interpretation in tune with logic and common sense.

16

*Burson*, 424 Md. at 324 (citations and quotations omitted).

In *Burson*, the Substitute Trustees made an argument very similar to one considered and adopted by the trial court in the case *sub judice*. Both the trial court in the case at hand and the Substitute Trustees in *Burson*, relied on an excerpt from *Simard v. White*, 383 Md. at 317, where the Court said that in a mortgage foreclosure "the underlying origins of the proper priorities to be applied to sums received at any foreclosure sale . . . have been for over two hundred years to primarily protect the interests of mortgagors and mortgagees." In *Burson*, the Court said:

> Relying on our decision in *Simard v. White*, 383 Md. 257, 859 A.2d 168 (2004), the Trustees ask that we apply an interpretation of the rule that protects the interests of mortgagors and mortgagees. They aver that their interpretation, under which the original purchaser's liability "continue[s] through multiple resales of the property," best accomplishes this goal. To be sure, the interpretation advocated by the Trustee would enhance the likelihood that mortgagors and lenders would secure a full recovery from their loss caused by the original purchaser's default, a desirable result. Yet, other considerations must be weighed.

424 Md. at 326 (footnote omitted).

Other considerations that must be weighed include: 1) principles of Maryland contract law that govern the appropriate measure of damages to be applied when a contract is breached (*id*. at 327-29), and 2) principles governing the interpretation of the Maryland Rules that are "in tune with logic and common sense." *Id*. at 324. Based on *Burson*, we reject the trial court's implied conclusion that, under Md. Rule 14-305(g), when determining

17

the rights of a defaulting purchaser, the right of the mortgagor and mortgagee are always "paramount" to that of the defaulting purchaser.

Maryland Rule 14-305(g) was derived from former Rule BR6 c, which contained language very similar to that currently found in Md. Rule 14-305(g) except that Rule BR6 c used the phrase "may take such other action as justice may require" instead of "may take other appropriate action." We see, however, no substantive difference between Rule BR6 c and Rule 14-305(g).[4]

In *McCann v. McGinnis*, 257 Md. 499 (1970), Judge Marvin Smith, speaking for the Court of Appeals, provided a brief historical review of the origin and history of Rule BR6 c *viz*.:

> [Rule BR6 c] is a restatement of the preexisting statutory law found in Code (1957), Art. 16 § 163 prior to its repeal by Chapter 36, § 1 of the Laws of 1962. *Merryman v. Bremmer*, 250 Md. 1, 241 A.2d 558 (1968). That section provided in pertinent part:
>
>> "The court shall have full power and authority, on application by * * * petition of the trustee appointed by said court to sell real estate, to compel the purchaser thereof to comply with * * * the terms of such sale, by process of attachment or other execution suited to the case; or the said court * * * may direct the property purchased to be re-sold, at the risk of such purchaser, upon such terms as the court may

---

[4] BR6 c read:

In case of default by the purchaser in a sale reported to the court, the court, on application, and after notice to the defaulting purchaser, may order a resale at the risk and expense of such purchaser, or may take such other action as justice may require.

direct; and in such case, if the proceeds of the resale, after payment of the expenses thereof and of all costs of proceeding, shall not be equal to the payment of the purchase money originally bid therefor, the court may order and direct the difference to be paid by the said purchaser, and enforce such order by execution."

Although the statute referred to sales by trustees appointed by the court, it has been held to apply to sales under the power contained in a mortgage. *Bilbrey v. Strahorn*, 153 Md. 491, 495, 138 A. 343 (1927); *Middendorf v. Baltimore Refrigerating and Heating Co.*, 117 Md. 17, 24, 82 A. 1047 (1911); *Aukam v. Zantzinger*, 94 Md. 421, 427, 51 A. 93 (1902).

The statute remained unchanged from the time it was enacted as Code (1888), Art. 16, § 194, until its repeal. It was originally enacted as Chapter 216 of the Acts of 1841. The original enactment was altered when enacted as Code (1860), Art. 16, § 131 by the addition of the words "and enforce such order by execution." Otherwise, there was no change after the 1841 enactment until the 1962 repeal.

257 Md. at 506-07. *See also Simard v. Burson*, *supra*, where this Court had occasion to once again examine the history of Md. Rule 14-305(g) and to apply it. 197 Md. App. at 407-418.

According to appellees, even though Md. Rule 14-305(g) uses the word "or," a circuit court judge, when implementing that rule, has the discretion to order a forfeiture of the deposit [as other appropriate action] and order a resale of the Property at the risk and expense of the defaulting purchaser.

*Webster's Unabridged Dictionary of the English Language*, page 1011 (1981) defines as follows:

**or** . . . *conj.* **1.** (used to connect words, phrases, or clauses representing alternatives): *to be or not to be.* **2.** (used to connect alternative terms for the same thing): *the Hawaiian or Sandwich Islands.* **3.** (used in correlation) *either . . . or; or . . . or; whether . . . or,* **4.** (used to correct or rephrase what was

19

previously said): *His autobiography, or rather memoirs is ready for publication. . . .*

In the context of Md. Rule 14-305(g) "or" is a word used to "connect words, phrases or clauses representing alternatives." Therefore, a circuit court judge, acting pursuant to Md. Rule 14-305(g), has the power to act only in the alternative. Examples as to when a judge might appropriately act in the alternative and not order a sale at the defaulting purchaser's risk and expense were provided in *McCann v. McGinnis*, 257 Md. at 511. The *McCann* Court, interpreting Md. Rule BR6 c, said:

> That there may be situations in which it would not be just, wise or expedient to direct a resale at the risk of the original purchaser is recognized by the latter portion of Rule BR6 c which authorizes the court to "take such other action as justice may require." It is possible to think of situations where justice would not require a resale at the risk of the purchaser as, for instance, in the case of insolvency of the purchaser that existed in *Sloan v. Safe Dep. & Tr. Co.,* 73 Md. 239, 20 A. 922 (1890), to which the chancellor made reference, or where the purchaser was insane as in the sheriff's sale in *Cund[e]ll v. Haswell*, 23 R.I. 508, 51 A. 426 (1902).

We hold that under Rule 14-305(g), a court cannot order A <u>and</u> B; it can only order A <u>or</u> B. Put another way, once the court selects one of two alternative remedies, it is not appropriate to award the second alternative remedy.[5]

**CONCLUSION**

The circuit court erred when it signed the order, docketed on February 10, 2012, that

---

[5] If the defaulting purchaser is believed by the circuit court to be insolvent, we can see situations where "other appropriate action" might be to allow the Trustee to resell the property at the Trustee's own risk, but to allow any shortfall from the sale plus all costs and expenses to be paid out of the security deposit.

20

ordered a forfeiture of the deposit and a resale of the property at Greentree's risk and expense. The court also erred when it, by an order docketed on August 12, 2013, affirmed the February 10, 2012 order and sustained the exceptions to the auditor's final report.[6]

This case shall be remanded to the Circuit Court for Anne Arundel County with instruction to pass an order requiring that the proceeds of the second sale be allocated in accordance with the auditor's final report.

**JUDGMENT REVERSED AND CASE REMANDED TO CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR ACTION IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**

---

[6] Nothing in this opinion should be interpreted as preventing the Trustee or mortgagor, in the event of a default by a foreclosure sale purchaser, from utilizing the deposit to offset any losses occasioned by a resale.

21